Joel G. Olofsson and Sims Motor Transport Lines, Inc., Plaintiffs-Counter-Defendants, Appellees, v. Margaret A. Wood, Defendant-Counter-Plaintiff, Appellant.

**Gen. No. 11,141.**

Second District, First Division.

October 16, 1959.

Released for publication November 3, 1959.

33

James A. Dooley, of Chicago, and O'Brien, Burnell and Puckett, of Aurora, for appellant.

Gates W. Clancy, of Geneva (Robert C. Jenkins and Paul A. McLennon, of counsel) for appellees.

JUSTICE McNEAL delivered the opinion of the court.

This action arose out of a motor vehicle collision at the intersection of State Routes 47 and 64 in Kane County, Illinois. Shortly before the collision the plaintiff, Joel G. Olofsson, was driving a tractor-trailer

unit east on Route 64, and the defendant, Margaret A. Wood, was driving her automobile north on Route 47. The tractor was owned by Olofsson and leased to the plaintiff, Sims Motor Transport Lines, Inc., owner of the trailer. A trial by jury resulted in a general verdict finding defendant guilty and assessing Olofsson's damages at $7250 and Sims' damages at $250. Judgments were entered in favor of plaintiffs for the amounts fixed by the verdict, and against defendant on her counterclaim. Defendant's post trial motion was denied, and this appeal followed.

Defendant's theory on appeal is that the trial court erred in forcing this case to trial ahead of a prior Cook County suit which was set for trial the next day, that the court erred in its rulings on the evidence and in instructing the jury, and that the verdict is grossly excessive.

Plaintiffs' complaint was filed in the Circuit Court of Kane County on April 12, 1956. In count I Olofsson alleged: that the collision occurred about 7:18 p. m., on November 30, 1955; that traffic at the intersection was regulated by traffic control devices, to-wit: stop signs for traffic on Route 47, and over the center of the intersection, an electrically operated signal flashing red for traffic on Route 47 and amber for traffic on Route 64; and that defendant negligently, or in the alternative willfully and wantonly, operated and drove her automobile, and as a direct and proximate result thereof, it collided with Olofsson's tractor, injuring him and damaging his vehicle. Several negligent or willful and wanton acts were specified, including defendant's driving through the stop sign and signal, her failure to yield the right-of-way, to keep a proper lookout, etc. Olofsson sued for $17,000 on account of his personal injuries and for loss of use and repair of his tractor. In count II Sims Motor Transport realleged the negligence and willful and wanton para-

36

graphs of count I, and claimed $500 for loss of use and repair of the trailer.

On June 5, 1956, defendant's counsel, O'Brien, Burnell & Puckett, answered the complaint, denied the alleged negligent and willful and wanton acts, and demanded a trial by jury. On June 12 plaintiffs' attorney requested the clerk to place the cause on the trial calendar, and defendant's attorneys were notified of this request.

On January 30, 1957, defendant filed a motion for leave to add James A. Dooley as additional counsel, to withdraw her answer and to move to dismiss the cause, or in the alternative, to file a counterclaim. In her motion for leave it was alleged: that a prior action commenced on March 28, 1956, was pending in the Superior Court of Cook County between the same parties and for the same cause, within the meaning of section 48(c) of the Civil Practice Act [Ill Rev Stats 1957, c 110 § 48(c)]; that plaintiffs did not appear and answer in that action until August 2, 1956; that when defendant was served with summons in the Kane County suit on April 18, 1956, she immediately forwarded the summons to her insurer in Springfield; that the insurer forwarded the summons to Attorneys, O'Brien, Burnell & Puckett, who filed defendant's answer in the instant suit; that said attorneys had no knowledge that defendant had another action pending in the Superior Court; and that defendant did not know the names of the attorneys selected by her insurer to represent her until she received a letter from them on October 27, 1956. Defendant's motion was supported by affidavits of attorneys associated with her respective counsel, and copies of her complaint in the Superior Court and plaintiffs' answer thereto were exhibited with her motion.

On March 4, 1957, the court granted Mr. Dooley leave to appear as additional counsel, but denied de-

37

fendant's motion for leave to withdraw her answer and to file a motion to dismiss. On April 1, 1957, the court granted defendant's motion for leave to file a counterclaim, and defendant filed a counterclaim containing substantially the same allegations as those set forth in her complaint in the Superior Court. Plaintiffs answered defendant's counterclaim with the same admissions and denials contained in their answer in the Superior Court, and as an affirmative defense they admitted that counterplaintiff sustained the injuries alleged. Trial of the issues under the complaint and counterclaim and answers thereto was commenced on April 1, 1957, and on the 11th the jury returned the verdict for plaintiffs mentioned above.

█ Generally the court which first takes cognizance of an action over which it has jurisdiction and power to afford complete relief has the exclusive right to dispose of the controversy, without interference from other courts of coordinate power in which similar actions are subsequently instituted between the same parties, on the same subject, and to test the same rights. 14 I. L. P. 394, Courts 253. However, it has been held that the court whose process is first served has jurisdiction over the whole litigation, although the complaint was not first filed in that court, and that failure of a party to object will give a court, which subsequently acquires it, jurisdiction of the cause. 21 C. J. S. 754, Courts Sec. 492.

In Plume & Atwood Mfg. Co. v. Caldwell, 136 Ill. 163, 165, the Court said: "It is familiar that where two or more courts have concurrent jurisdiction of the same subject matter, the court first acquiring it by the service of process will retain the same to the exclusion of the other. . . . The rule giving exclusive jurisdiction to the court first acquiring it, is one that the parties may waive . . . ."

In De Brincat v. Mogan, 36 P.2d 245 (Cal.), De Brincat and Whitfield were involved in a collision in San Mateo County and both claimed damages. On February 9, 1934, Whitfield filed a complaint against De Brincat in the Superior Court in San Francisco. On February 13 De Brincat sued Whitfield in the Superior Court in San Mateo County and summons was served on the same day. The summons in the former case was served on February 17. On appeal from an order denying a petition in mandamus to stay proceedings in the court in San Francisco, the California District Court of Appeal said:

"Throughout the decisions we find the expression that 'the court which first acquires jurisdiction . . . retains its jurisdiction and may dispose of the whole controversy.' 15 C. J. p. 1134, and cases cited in note 58; 7 R. C. L. p. 1067. In United States v. Lee (D.C.) 84 F. 626, Judge Wellborn has made an exhaustive review of the authorities involving actions in personam, and concludes that 'the unbroken current of authorities is to the effect that priority of jurisdiction is determined by the date of the service of process.' See page 631 of 84 F., and cases cited.

"Our conclusion is therefore that in actions of this character the court in which process is first served has jurisdiction over the whole litigation and has full power to require the parties to come into that court for a complete ajudication of the controversy."

In Paskewie v. East St. Louis & Suburban R. Co., 197 Ill. App. 1, 6, a declaration was filed in the Circuit Court of Madison County on May 15, 1914, to recover for injuries sustained by a minor. Defendant filed a special plea alleging that on August 10 the minor sued defendant in the Circuit Court of St. Clair County on account of the same injuries and then recovered a judgment for $444. Plaintiff demurred to the special plea

39

on the ground that the Circuit Court of St. Clair County was without jurisdiction because the suit in Madison County was commenced before the proceedings were commenced in St. Clair County and all proceedings in that county were had after the Madison County Circuit Court had acquired jurisdiction. The trial court overruled the demurrer, judgment was entered against plaintiff for costs, and he appealed. In affirming the judgment, the Court said:

"The parties to the suit in St. Clair County were identical with those to the suit pending in Madison County and the subject matter was the same. Had there been no suit pending in Madison County, the Circuit Court of St. Clair County would, under the circumstances named, have undoubtedly had jurisdiction of both the subject matter and the parties to the suit, and if the parties in order to expedite matters, or for other good cause, sought to take judgment in the Circuit Court of St. Clair County rather than to wait until the next term in Madison County, they had a right to do so and the defendant in this suit alone could take advantage of the former suit pending. A judgment so entered could not be attacked collaterally but if there was fraud in obtaining it, advantage thereof could only be taken by appeal or other action directly attacking the judgment. Where parties voluntarily submit themselves to the judgment of a court having jurisdiction of the subject matter, they are bound by such judgment, though the same matter was pending in a prior suit. 11 Cyc. 987, subsec. C; Gregory v. Kenyon, 34 Neb. 640; Bassill v. Bassill, 207 Mass. 365."

In Wall v. Wall, 296 S.W.2d 160 (Mo.), it appears that on December 10, 1952, Neoma Wall sued Robert K. Wall for a divorce in Division 6 of the Circuit Court of St. Louis County, No. 197,800. Defendant filed no answer. On March 3, 1954, Robert K. Wall sued Neoma Wall for a divorce in Division 4 of the same court, No.

40

202,644, and he was granted a decree on April 5, 1955. In the latter suit Lovell George appeared as attorney for Neoma Wall, but made no plea that No. 197,800 was pending. On May 18, 1955, Louis L. Hicks, Neoma Wall's attorney in No. 197,800 filed a motion in that case for an allowance of fees and was granted an attorney's lien for $100. In reversing the allowance, the St. Louis Court of Appeals said: "However, a court which has subsequently acquired jurisdiction of the parties and the subject matter may, through failure on the part of one entitled to object, exercise its jurisdiction and fully determine the cause. State ex rel. Kansas City v. Harris, 357 Mo. 1166, 212 S.W. 2d 733; Drake v. Kansas City Public Service Co., 226 Mo. App. 365, 41 S.W.2d 1066, 54 S.W.2d 427. In such cases, the right to proceed to a determination of the case is exclusive and embraces all of the issues properly triable. . . ."

Although Miss Wood filed her complaint in the Superior Court on March 28, 1956, no service was had on any defendant until July 2. Plaintiffs' complaint was filed in the Kane County Circuit Court on April 12, the summons was filed on April 18 showing service thereof on April 16, defendant's answer and her demand for trial by jury were filed on June 5, and on June 12 the cause was ready to be placed on the trial calendar. Thus, by the acts of the parties themselves the cause was at issue and ready for trial in the Kane County Circuit Court before plaintiffs had any notice by service of process that they were defendants in Miss Wood's action in the Superior Court. There is no basis for appellant's suggestion that plaintiffs commenced their action in Kane County in order to evade the jurisdiction of the Superior Court. Further, defendant Wood made no effort to advise the Kane County Circuit Court of the pendency of the Superior Court case or to object to the jurisdiction of the Kane County Circuit Court

until January 30, 1957, although she knew on October 27, 1956, that her insurer had selected attorneys other than the counsel who filed her complaint in the Superior Court. According to the record, when the court denied defendant's motion to withdraw her answer on March 4, 1957, defendant withdrew her counterclaim. However, on April 1, defendant again requested leave to file a counterclaim. Leave was granted, her counterclaim was filed, and all issues between the parties were tried in the Kane County Circuit Court.

 In the light of the authorities cited above, we think that the Kane County Circuit Court first acquired jurisdiction of this cause because its process was first served; and that defendant voluntarily submitted to its jurisdiction by filing her answer and counterclaim in that court. By filing her answer in the Kane County Circuit Court, defendant waived her right to object under section 48 of the Civil Practice Act [Ill Rev Stats 1957, c 110, § 48] that another action was pending in the Superior Court. Because defendant waived that objection, demanded a trial in the Kane County Circuit Court, and for several months delayed advising that court that another action was pending in the Superior Court, we conclude that the matter of granting defendant leave to withdraw her answer and to object to the jurisdiction of the Kane County Circuit Court on the ground that another action was pending, was within the sound discretion of the trial court; and that the trial court did not abuse its discretion (2 I. L. P. 691, Appeal and Error 754), or commit any error in denying defendant such leave, under the circumstances shown by the record in this case.

According to the evidence a blinker light which flashed red for traffic on Route 47 and amber for traffic on 64, was suspended over the center of the

intersection. Traffic on Route 64 was also protected by a standard "Stop" sign and another sign underneath which read "Route 64 Traffic does not stop." Both signs were posted at the southeast corner of the intersection. Olofsson testified that when he was about 300 feet west of the intersection and traveling downgrade about 32 miles an hour, he saw two cars on Route 47, one stopped at the stop sign and another moving about 45 miles an hour about 500 feet south of the intersection. He flashed his lights at the stopped car, but when he was about 100 feet from the intersection that car pulled out and turned left in front of him. He pressed his brakes enough to slow the truck to 28 or 30 miles an hour and to avoid hitting the rear of the first car. Then he noticed the second car about 100 feet from the intersection going about 45 miles an hour. It slowed down and then came forward faster. It appeared to Olofsson that Miss Wood had no intention of stopping at the stop sign. He put the brakes down as hard as he could and turned the truck to the left. His right front bumper and fender collided with defendant's car, near the center of the intersection. The truck went over the curb, off the pavement and hit a cable supporting a telephone pole. Olofsson was thrown out of the truck.

The tractor-trailer unit came to rest 50 to 60 feet northeast of the point of collision. Miss Wood's car came to rest 60 to 65 feet off the highway on the south side of Route 64 and about 200 feet southeast of the point of collision.

On direct examination Miss Wood testified that she had not driven an automobile at all until she purchased a 1953 Henry J in June, 1954. After she purchased the car, she drove it to and from school, once from Elgin to Champaign, once to Taylorville, and from Elgin to Effingham for Thanksgiving, 1955. After Thanksgiving she started to return to Elgin, and on

account of the snow and ice she left the car in a farmyard near Morris. Three days later she was driving the car from Morris to Elgin when the accident occurred. She said that she was on Route 47 about 100 to 200 feet behind the car which stopped at the stop sign and then proceeded across Route 64. She stopped at the stop sign, looked both directions, and saw lights at least a block or a block and a half away, and higher than she was. She decided she had time to cross, and proceeded. Suddenly the lights were there and her next recollection was that she was in the hospital.

Defendant suggests that by the court's repeated exclusion of testimony concerning her injuries, the jury "inevitably must have gained the impression that the court did not believe her to be seriously injured . . . ." On the contrary, at defendant's request, the court told the jury that he had not expressed any opinion on the facts of the case or upon the credibility or want of credibility of any witness. Further, the court thoroughly instructed the jury that plaintiffs admitted that Miss Wood sustained severe and permanent injuries, great pain and suffering, past and future, etc., once on behalf of plaintiffs, in the language of their admissions in the pleading, and twice on behalf of the defendant. The thoroughness of the court's instruction in regard to the admitted severity and permanency of defendant's injuries is demonstrated by her Instruction 17 wherein her alleged damages were separated into five items, each of which was followed by the words: "as is admitted by Joel G. Olofsson and Sims Motor Transport Lines, Inc." Furthermore defendant could not have been prejudiced by the exclusion of evidence of her injuries because the jury found against her on the issue of liability, and since the verdict was general the presumption is that the jury found her guilty of willful

44

and wanton conduct. Greene v. Noonan, 372 Ill. 286, 291; Buglio v. Cummings, 317 Ill. App. 73, 76.

On cross-examination Miss Wood said that she was going about 40 miles an hour when she first saw the car ahead of her. She was then behind it "several hundred feet." She wasn't aware of any other sign or signal at the intersection except the stop sign. At the time she saw the lights a block or block and a half away, she also heard the motor of a vehicle approaching, yet as she started from a standing position, she directed her attention toward Route 47, and doesn't know whether she looked again to the right or left after she started to cross the intersection. Also on cross-examination, Miss Wood was called upon to state the mileage between the cities mentioned by her on direct examination, and to state that she procured a handbook for women drivers in July or August, 1955. In this connection appellant contends that this book was received in evidence over objection, and that it was error to permit evidence as to the distance defendant had driven automobiles.

The abstract shows that although the court overruled an objection when the book was first offered in evidence, the book was not then admitted. Later, when the book was reoffered, the abstract shows that the court ruled: "I am going to sustain the objection and not admit the book," and that the book was denied admission in evidence. Appellant's complaint that the handbook for women drivers was received in evidence is not supported by the record.

■■ The matter of the extent of defendant's experience as a driver of motor vehicles was opened up by inquiring of her on direct examination concerning the various places she had driven the vehicle involved in the collision. We think that cross-examination extended to whatever might explain her evidence in chief or to show the limited distance involved in such ex-

45

perience. The matter of mileage could not have been considered prejudicial by defendant's attorney at the trial, because he pursued the matter further on redirect and disclosed that at the time she applied for a learner's permit she had driven motor vehicles only fifty miles. The trial court has broad discretion in controlling the scope of cross-examination and a case will be reversed only if such discretion has been clearly abused and the abuse materially affected the result of the trial. We are of the opinion that the cross-examination complained of was within the scope of the direct examination and that there was no abuse of discretion by the trial court in permitting such cross-examination.

 Defendant also contends that the court erred in permitting one of Olofsson's medical witnesses to answer a hypothetical question in which all of the material facts were not included. The rule is that where an expert witness is asked a hypothetical question and the facts are not disputed, the question must contain all the material facts or the opinion is likely to mislead the jury (Wolczek v. Public Service Co., 342 Ill. 482, 498); but where the facts are disputed, counsel propounding a hypothetical question has a right to ask it assuming only the elements that he claims appear in the evidence, and if the question does not fully and sufficiently cover all points, then counsel for the other party has a right to change the question so as to cover the facts which he contends were applicable (Monark Battery Co. v. Industrial Comm., 354 Ill. 494, 499; 18 I. L. P. 459, Evidence 330). In the instant case defendant's counsel assumed other facts in putting further hypothetical questions and cross-examined plaintiffs' expert on the basis that the facts upon which such questions were predicated were in dispute. Further, we have held that any error in ruling on a general objection to a hypothetical question is waived

46

by the failure to point out the facts claimed to have been improperly included in or omitted from such a question. Placher v. Streepy, 19 Ill.App.2d 183, 190; Smith v. Illinois Valley Ice Cream Co., 20 Ill.App.2d 312, 321. Here, the facts were in dispute, plaintiffs' hypothetical question was proper, defendant's attorney waived his objection by failing to point out the facts claimed to have been omitted from the question, and the court committed no error in overruling defendant's general objection.

Defendant also argues that the court erred in permitting Olofsson's medical witnesses to testify to subjective symptoms. Dr. Stockadle, an orthopedic surgeon, examined Olofsson the same evening he was injured, and testified that he was complaining of pain in his left forehead. Defendant's counsel promptly objected to this subjective complaint. The doctor then found a swelling of plaintiff's forehead and an abrasion on his left knee. Plaintiff was also examined by Dr. Stockadle on the day he testified. He then found that plaintiff had points of tenderness over several vertebrae and a clicking in his right knee. On defendant's motion to strike, the court ruled: "Anything he has testified to as to the complaint of the patient, pain in his knee, all of that will be stricken." We construe the court's ruling to mean that all of Dr. Stockadle's testimony based upon Olofsson's complaints or subjective symptoms was stricken. Dr. Zeitlin testified that he took several X-rays of Olofsson's spine and right knee joint. From these X-rays Dr. Zeitlin found a flattening of the 4th vertebral disc and a spur condition which was the result of an irritation or bruise. We have carefully examined the abstract of Dr. Zeitlin's testimony and find no objection that any of his testimony was based upon subjective symptoms.

 Defendant contends that plaintiffs' Instructions 15, 28, 34, 37, 46 and 47 were erroneous. Instruc-

47

tions 15 and 34 were not mentioned in defendant's post trial motion or by her attorney at the conference on instructions. His entire statement at the conference, as shown by the abstract, was as follows: "I will object to Instruction Nos. 28, 37, 46 and 47. I would like to note an objection to the number of Instructions given on behalf of the Plaintiff." Among the 49 errors assigned in defendant's post trial motion are allegations that the court erred in giving Instructions identified as P. 4, 28, 30, 32, 33, 37, 46 and 47, and those Instructions are set forth verbatim in the motion. Except as indicated, however, defendant made no specific objection to any of those Instructions, either at the conference or in her post trial motion. We have held that a party will not be heard to complain of alleged errors in Instructions where such errors were not called to the trial court's attention by specific objections made at the conference on Instructions. Arboit v. Gateway Transp. Co., 15 Ill.App.2d 500, 512, 146 N.E.2d 582; Onderisin v. Elgin J. & E. Ry. Co., 20 Ill.App.2d 73, 77, 155 N.E.2d 338.

By Instruction 47 plaintiffs attempted to inform the jury as to the issues raised by the pleading. Although not peremptory in form, the Instruction contains more than 800 words. Excepting statutory references, this Instruction recites the eleven specifications of negligence in substantially the same language used in Olofsson's count I, and then repeats verbatim the same eleven specifications as realleged in Sims' count II, and finally repeats for the third time ten of the same eleven specifications as defendant's alleged "willful and wanton negligence" against Olofsson. These willful and wanton acts were also realleged in Sims' count II, but were not set forth in the Instruction. Thus, Instruction 47 was not only unnecessarily repetitious and prolix, but it did not accurately inform

48

the jury as to the issues presented by plaintiffs' complaint. In advising the jury concerning the issues raised by the pleading, the jury should be instructed accurately and in a clear and concise manner. This should be accomplished by a summary of the pleading, succinctly stated without repetition and without undue emphasis. Signa v. Alluri, 351 Ill. App. 11, 20. We think that Instruction 47 is subject to many of the criticisms mentioned in the Signa case. However, defendant is in no position to complain of plaintiffs' 47 because her Instructions 16 and 17 are subject to similar criticisms. By Instruction 16 defendant attempted to inform the jury as to the issues raised by her counterclaim and plaintiffs' admissions of defendant's injuries. The detailed allegations of defendant's injuries as set forth in her counterclaim were unnecessarily repeated twice in Instruction 16, and as noted above, such admissions were unnecessarily repeated and unduly emphasized five times in defendant's Instruction 17.

Defendant also suggests that plaintiffs' Instructions 46 and 47 were erroneous because in 46 the jury was instructed that although plaintiffs admitted that defendant was injured, they alleged that her injuries were sustained not by their acts but by reason of her lack of due care, without requiring that such lack of due care be the proximate cause of the accident, and because Instruction 47 omitted any reference to the element of proximate cause. These omissions were cured by plaintiffs' Instructions 4 and 32 which clearly required that defendant's lack of due care "proximately contributed to cause" the accident, and by defendant's peremptory Instruction 22 that plaintiffs could not recover at all unless they proved three propositions including one that defendant's negligence "if any, was the proximate cause of or proximately contributed to cause said collision."

49

■■■ We conclude that defendant failed to give the trial court any specific grounds why plaintiffs' Instructions 15, 28, 34, 37, 46 and 47 were erroneous at the conference on Instructions, and that alleged errors in those Instructions were not properly preserved for review. Nevertheless we have carefully examined all given Instructions and even though such errors had been properly preserved, it is our opinion that defendant cannot complain because she committed similar errors and cured others by her own Instructions, and that her rights were not prejudicially affected by any Instruction now criticized by her attorney.

■■■ Lastly, defendant claims that the damages allowed Olofsson are excessive. We have carefully examined the record and find that the verdict was supported by the evidence, and we find nothing to indicate that the amount of damages allowed was the result of passion or prejudice on the part of the jury. The question of damages is ordinarily one of fact for the jury to determine and the court cannot substitute its judgment for the judgment of the jury. Santiemmo v. Days Transfer, Inc., 9 Ill.App.2d 487, 503; Clancy v. Pacenti, 15 Ill.App.2d 171, 178.

We find no errors in the record which would justify a reversal, and therefore the judgment of the Circuit Court of Kane County is affirmed.

Affirmed.

SPIVEY, P. J. and DOVE, J., concur.