**Theron E. Smelcer, Plaintiff-Appellee, v. Robert S. Sanders, Defendant-Appellant.**

**Gen. No. 11,659.**

Second District, Second Division.

February 19, 1963.

Maynard & Maynard, of Rockford (James F. Maynard, of counsel), for appellant.

Sam J. Cannariato, of Rockford, for appellee.

CROW, J.

The plaintiff, Theron E. Smelcer, recovered a verdict and judgment in a jury trial for the sum of $8500 for injuries resulting from an automobile collision on January 3, 1961, near Rockford, Illinois. The Trial Court denied the defendant's post trial motion for judgment notwithstanding the verdict or new trial. The defendant, Robert S. Sanders, appeals and raises two points, namely, (1) that the Trial Court erred in giving the plaintiff's Instruction No. 7, relating to damages, including, as elements of damages, future pain and suffering, future medical expense, and future loss of earnings of the plaintiff, when, the defendant says, there was no competent or sufficient evidence in support thereof, and (2) the verdict is excessive,—evidencing passion or prejudice against the defendant, or a misunderstanding or misapplication of the rules of evidence and the instructions as to damages.

It is the plaintiff's theory that it is the duty of the defendant to point out specifically to the trial court wherein any instruction objected to is faulty, and the defendant did not do so; the amount of damages is primarily a question of fact for the jury, it is not clear that all reasonable men would agree the verdict is excessive, and there was sufficient evidence as to damages relating to future pain and suffering, etc. to justify the $8500 verdict, and when there is an evidentiary basis for the verdict the jury is free to disregard or disbelieve evidence inconsistent with its conclusion.

The evidence pertinent to the issues on this appeal, is substantially as follows, no evidence as to these issues having been offered by the defendant: the plaintiff, 63 years of age, was employed as a high pressure boiler fireman for about seven years, his last place of employment being Lock Joint Pipe Company, until September, 1960, when he quit. He fired three gas

fired boilers, checked air compressors, water pumps, blew down the boilers, cleaned the flues, and checked Honeywell charts for temperature. His wages were about $90 per week. He quit this job four months before the present accident and had been unemployed during that four months except for a part time job as a gas station attendant. He had not tried to go back to his former occupation because the doctor told him he shouldn't do any heavy work. The reason he quit his job with the Lock Joint Pipe Company was that they required him to do too much. On the date and at the time of the accident, he was driving to the J. I. Case Company in Rockford to keep an appointment to apply for a job of the same kind that he had been doing previously. As a result of the accident he never arrived at the J. I. Case Company plant, and for the next 9 or 10 months he was physically unable to search for employment.

In the accident the plaintiff was pinned against the steering wheel of the car, his upper plate was broken, his gums were cut, he was bleeding from the mouth, he had a lacerated right hand, which laceration left a scar, he suffered a fractured sternum (breast bone), contusions of the chest wall, and some temporary myocardial damage. He was hospitalized, initially, for seven days. The lacerations were cleansed and dressed, and x-rays were taken. The fractured sternum was a linear, nondisplaced, simple fracture, for which no treatment was prescribed or given except bed rest. It was properly healing some months later, May 19, 1961, and was completely healed January 22, 1962. There was pain and tenderness over the anterior chest. There was some fluid in the pleural space which can result from trauma, which fluid was later absorbed into the system. An initial electrocardiogram bore out some myocardial damage but a subsequent electrocardiogram two days later indicated those symptoms had

167

for the most part disappeared. The lacerations did not require suturing and healed satisfactorily. After his discharge from his initial hospitalization he was seen by his doctor January 16, 1961 for a check up, and an electrocardiogram at that time was normal. After leaving the hospital he remained in bed about two weeks, and suffered quite a bit of pain. About 2 weeks after his initial discharge from the hospital he fainted at home. and blood was noted in his stool. He returned to the hospital January 20, 1961. X-rays were taken, indicating a duodenal ulcer. Bed rest and "Sippy Management" of a peptic ulcer were prescribed and followed. He was again discharged from the hospital January 27, 1961. He had had no history of ulcers. The plaintiff proved special damages, being the hospital care, medical, ambulance service, drugs, and dental work, in the total amount of $959.10. The plaintiff said he had, after the accident, pain in his chest, mouth, under his chin, gums, and right hand. He said that since the accident he is unable to enjoy his former recreations of fishing, ball games, seeing football games, and cannot very well do household chores he formerly performed such as mowing grass, putting up storm windows, taking down screens, and washing windows. He said that at the time of trial in 1962 pain in his vertebrae bothers him and in his chest on the right side.

Dr. John P. McHugh, physician and surgeon, who treated the plaintiff, testified that when first seen he was in extreme pain, conscious, and able to complain about the pain, which he described as primarily located over his anterior chest. He had a laceration of his chin. He had lost his upper plate, had sustained a cut on the inner aspect of his upper lip, and his left hand was injured. While in the hospital during the first week he was bedfast, requiring general nursing care. Active treatment, as far as having to reduce any of the

168

injuries that were found, was not necessary at that time. He needed general supportive help, nursing care, because he was unable to turn in bed by himself, and respiration was a problem to prevent pneumonia, because of the splinting of his chest (sternum), because of these injuries. These ailments would produce pain and the patient complained of pain daily. Dr. McHugh testified that the fracture, lacerations, etc., were all induced by this accident; that the occurrence of hemorrhage from a peptic ulceration of the duodenum was also related to the accident; and the changes in plaintiff's electrocardiograph heart tracings, myocardial damage, of a temporary character, were the result of the accident also. When Dr. McHugh saw the patient January 20, 1961 he complained at that time of weakness or dizziness, and he was returned to the hospital. A general physical examination was made and x-ray showed a duodenal ulcer. The plaintiff's complaint about chest pain, after the accident, followed two weeks later by a bleeding ulcer, evidenced by black stools, is consistent, the doctor said, with having been involved in an automobile accident and having suffered severe trauma. He said the ulcer was large, larger than usual, and that the patient could have some progression of the ulcer, with progressive scarring, rather silently. The lack of pain, not unusual in older people, is more dangerous because you do not know something is happening. "In my opinion I felt that he (the plaintiff) should be seen at six month intervals for a year or a year and a half, and then at year intervals for as long as he chooses me as his physician, or some other physician. I believe it will be necessary from time to time to take x-rays to see the condition of the ulcer," Dr. McHugh testified. He said when an ulcer heals, the scar, though structurally strong, is not as resistant to digestive action and is weaker than the surrounding stomach. During

169

the initial hospitalization and at the initial discharge he gave and prescribed diupress, to lower blood pressure, which is used with a warning it will increase stomach acids. Mental stress can release stomach acids and that is what happened here, the doctor said. He said the plaintiff's future normal work would be conditioned by the fact he had an ulcer and should eat on the job. Trauma is one cause of mental stress. This was a particularly stressful interruption of the patient's normal habits. If an ulcer were to recur in this patient it could be deadly because of his arteriosclerosis.

Dr. William Sneed, radiologist, Rockford Memorial Hospital, testified as a witness for the plaintiff, identified certain x-ray exhibits as those of the plaintiff, referred to the fractured sternum, and the duodenal ulcer, said the fractured sternum often takes a long time healing, and does cause pain in breathing until healed, and stated there is a distinct possibility that there is, within a reasonable degree of medical certainty, a causal connection between the trauma of this accident and the ulcer, which was a rather large one, accompanied by some bleeding, and which was found some fourteen days later. There is pain associated with an ulcer. Sometimes the first manifestation of an ulcer is bleeding,—the very first. Some patients have no pain. The tolerance to pain varies with patients. Generally, there is pain with an ulcer. The most common symptom of an ulcer is pain, but it is not always present. Ulcers are caused by an excess of acids secreted in the stomach. Stress ulcers may be caused by stress releasing an abnormal amount of steroids from the adrenals, and by people taking steroids medically for other reasons. The ulcer here was healed by October 11, 1961. Ulcers can form in a very short time in instances of great stress. He did not think this ulcer existed before the accident. The

170

circumstances are consistent with its being an acute ulceration.

Plaintiff's Instruction No. 7, is as follows:

"If you decide for the Plaintiff on the question of liabilitiy, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendant:

The nature, extent and duration of the injury.

The disability resulting from the injury.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future.

The loss suffered by the Plaintiff as a result of his physical inability to earn a salary or wages, and the present cash value of the earnings reasonably certain to be lost in the future (if you believe from the evidence that, in fact, the plaintiff was physically unable to work in whole or in part, in the future).

The loss suffered by the plaintiff in the sum of $100.00, which sum was stipulated to by both parties to the lawsuit, as the reasonable amount of damages to the car of the plaintiff.

Whether any of these elements of damages has been proved by the evidence is for you to determine. Your verdict must be based on evidence and not upon speculation, guess, or conjecture."

171

In the defendant's abstract the only reference given as to the conference on instructions concerning this instruction is: "Plaintiff's tendered Instruction No. 7, objection, amended, given." In the transcript of the record it appears that the only thing the defendant's counsel said at the conference as to that instruction is: "I would object to it as to the third item, the pain and suffering experienced, that's all right. And reasonably certain to be experienced in the future as a result of the injuries—although as I recall, no testimony was given that this will continue on into the future, by any doctor. And no doctor has said that this is a permanent condition." Under Section 67 of the Civil Practice Act, Ill Rev Stats 1961, c 110, § 67: "The court shall hold a conference with counsel to settle the instructions and shall inform counsel of his proposed action thereon prior to the arguments to the jury." And under Supreme Court Rule 25–1, Ill Rev Stats 1961, c 110, § 101.25–1: "Counsel may object at the conference on instructions to any instruction prepared at the Court's direction, regardless of who prepared it, and the Court shall rule on these objections as well as objections to other instructions. The grounds of objections shall be particularly specified." An abstract on an appeal must be "sufficient to present fully every error relied upon": Supreme Court Rule 38, Appellate Court Rule 6,—Ill Rev Stats 1961, c 110, §§ 101.38 and 201.6. Section 67 does not require the Court to perform a useless act; the purpose of the conference is to afford Counsel an opportunity to object to allegedly erroneous instructions; counsel cannot sit idly by and permit instructions to be given without specific objection and then have the advantage of seeking to predicate error thereon for the first time in a post trial motion; failure properly to assert specific objections to an instruction at the conference precludes raising objections thereto on ap-

172

peal: Onderisin v. Elgin, J. & E. Ry. Co. (1959) 20 Ill App2d 73, 155 NE2d 338. Except for the particularly specified objections, if any, made at the conference, the party is considered as consenting by implication to the instructions and cannot later complain thereof: Arboit v. Gateway Transp. Co. (1957) 15 Ill App2d 500, 146 NE2d 582; Cf. Tabor v. Tazewell Service Co. (1958) 18 Ill App2d 593, 153 NE2d 98. Under the circumstances we do not believe the defendant-appellant's abstract is "sufficient to present fully every error relied upon" so far as this instruction is concerned.

█ Beyond that, if we consider the transcript of record itself it is still not at all clear what part of the instruction the defendant objected to, or what the particularly specified grounds of his objections were. The most that can be said is that apparently he objected, ambiguously, only to the third item,—the phrase "The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries"—in fact, it is evidently only the last part thereof, "reasonably certain to be experienced in the future as a result of the injuries," to which the defendant objected, if at all. As to that, in the light of the testimony of the plaintiff, the physician who treated him, and the radiologist, we think there is a sufficient evidentiary basis as to pain and suffering reasonably certain to be experienced in the future as a result of the injuries to justify the giving of the instruction, assuming the defendant had properly preserved his objection and sufficiently presented the alleged error in that respect.

 With regard to the claimed excessiveness of the verdict,—$8500,— the question of damages to be assessed in this kind of case is primarily one of fact for the jury; that the verdict may reflect an inflationary period in our economy is a fact to be considered, with other facts in evidence; the question is whether

173

reasonable men might differ in their answers to the question of the damages; we cannot substitute our judgment for that of the jury; reasonable men might differ here, and because we think they might we cannot say the jury was moved by passion or prejudice or other improper motive: Smith v. Illinois Cent. R. Co. (1951) 343 Ill App 593, 99 NE2d 717; Hulke v. International Mfg. Co. (1957) 14 Ill App2d 5, 142 NE2d 717. It is not clear that all reasonable men would agree that the amount is excessive: Schrage v. Allied Paper Corp. (1962) 34 Ill App2d 9, 180 NE2d 221. Under the circumstances, considering the special damages of $959.10, and the injuries which resulted from this accident, and the law, we cannot say the verdict is excessive. There is no precise rule by which an award of damages can be fixed in an action for personal injuries because compensation for them does not lend itself to mathematical computation; the only question is whether the jury on the evidence before them could have returned the verdict in issue; the denial by the trial court of the post trial motion, based in part upon the claimed excessiveness of the verdict, is entitled to weighty consideration; there is nothing in the record to indicate passion or prejudice on the part of the jury; the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation; it is not so large as to shock the judicial conscience: Barango v. E. L. Hedstrom Coal Co. (1956) 12 Ill App2d 118, 138 NE2d 829.

The judgment will, accordingly, be affirmed.

Affirmed.

WRIGHT, P. J. and SPIVEY, J., concur.