Nikki Lewis, Plaintiff-Appellee, *v.* Hull House Association, Defendant-Appellant.

(No. 56252;

First District (2nd Division)—January 21, 1975.

Dom J. Rizzi, of Chicago, for appellant.

Theodore L. Forsberg, of Chicago, for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This litigation began with a suit by Nikki Lewis against the Hull House Association to recover for personal injuries she sustained in a fall from a ladder in a theater owned by defendant. In an amended complaint, plaintiff sought $125,000 in damages based on defendant's alleged negligence in maintaining the theater. Defendant's answer denied plaintiff's allegations and affirmatively asserted that she was a volunteer theater worker who had regularly used the ladder in question; therefore, she should have known of its defective condition. Then, as an affirmative defense, defendant alleged that plaintiff assumed the risk by continuing to use the ladder.

To these allegations plaintiff replied that she was an invitee on defendant's premises rather than a volunteer worker. Further, she denied all the affirmative assertions in defendant's answer. Later, on plaintiff's motion, defendant's affirmative defense was stricken, the court ruling that the relation of employer and employee did not exist between the parties. Thereafter, the case was heard by a jury that returned a $105,000 verdict in plaintiff's favor. A post-trial motion was made and overruled; judgment was entered on the verdict.

Defendant appeals and presents four issues for our review. (1.) Whether the trial court committed reversible error in an instruction it gave the jury. (2.) Whether on the occasion of her injuries, plaintiff, as a matter of law, was guilty of contributory negligence. (3.) Whether the evidence proved that plaintiff's injuries were the result of defendant's

negligence. (4.) Whether a judgment in defendant's favor should be entered in this court, or, in the alternative, the judgment in plaintiff's favor should be reversed and the cause remanded for a new trial because the jury's verdict was against the manifest weight of the evidence. The issues are raised from the following facts.

In May, 1965, plaintiff became associated with defendant's Hull House Theater in Chicago. She was one of a number of people who worked there without pay. Four or five weeks later she became the stage manager, and one of her duties was to see that the stage lights were in operation during performances. The lights were controlled from a booth that was located in a room above and immediately behind the stage. Access to the room was only by a vertical ladder made of solid metal with rungs that were round and smooth. The ladder was permanently fixed 5 inches from the wall.

In discharging her duties as the stage manager, plaintiff had to use the ladder. In fact, she had done so some 50 or 60 times before the incident in question and thus was familiar with it. The ladder had been the subject of discussion among defendant's volunteers and employees. Some persons had said in plaintiff's presence that the ladder was dangerous; some had said they were frightened about using it. Complaints about it were from both men and women, but defendant did nothing about the ladder.

During the evening of July 31, 1965, plaintiff was working when she learned that a bank of stage lights was out. She went to the control booth. As she had done on numerous occasions before, she started to climb the ladder, but when she was about 7 feet from the floor, one foot slipped back and she lost her balance. She tried to hang onto the ladder with both hands in an attempt to get her foot back on one of the rungs, but after some effort, one of her hands gave way, then the other and she fell to the floor. She tried to get up but could not. Later with the help of others, she was taken to a hospital where she remained approximately 3 weeks for an injury that resulted in a marked hunchback, a deformity of the spine.

After this incident, defendant had a testing-laboratory engineer inspect the vertical ladder. The engineer was a witness for the plaintiff, and the parties stipulated that the ladder was in the same condition when the engineer examined it as it was on the day of plaintiff's fall. The engineer told the jury that the ladder was 5 inches from the wall, whereas existing safety standards required that vertical ladders be set 7 inches from a wall. The engineer said his examination disclosed that the top rung of the vertical ladder was about 12 inches below the floor line of the room in which the control booth was located, whereas safety standards required

that the top rung of a vertical ladder be directly in line with the floor of the room to be reached.

There was evidence which told the jury that defendant's theater was extensively remodeled in 1962 or 1963. The building that housed the theater was subject to the Municipal Code of Chicago, particularly its chapters 67—3 thru 67—4(e) and 78—5.1(a)(b) which governed exits from buildings, floors, spaces or rooms. An architect, as an expert witness, testified for the plaintiff and told the jury that he knew the accepted architectural standards that were prevalent in Chicago in 1965. He said it was his opinion that the vertical ladder which defendant had furnished as the only access to the control booth did not conform with requirements of the Chicago Municipal Code nor with safety standards recognized in the city at the time plaintiff was injured. Speaking as an expert in such matters, the architect said that a vertical ladder like the one defendant had furnished should not have been used where there is frequent need for access, as was the case with the light-control booth in question. Such ladders, he said, were reserved for access to areas that had to be reached once or twice a year. He said that where frequent use of such areas was involved, the building owner should furnish a stairway.

Defendant called three witnesses. None of them, however, contradicted plaintiff concerning the incident of July 31, 1965, or her injuries. Another was the architect who worked on the remodeling of the theater in 1962-1963. He told the jury that he would not have recommended installation of the vertical ladder had he known that it was going to be used frequently as the only means of access to the light-control booth.

Based on the testimony of the engineer, her architect and the architect who testified for defendant, plaintiff's counsel tendered to the trial court instruction No. 15, which quoted from the city of Chicago ordinance governing exit requirements. Defendant's counsel objected to it on the ground that the ordinance did not apply to the case at issue. The tendered instruction, he argued, mentioned exits that were not relevant to the case. The trial judge ruled that the instruction should be given, but he instructed plaintiff's counsel to rewrite it. This was done. Then, at the conference that followed, the instruction was again tendered. The trial judge asked defendant's counsel if he had any objection to it. "No," he responded. "If they are typed as we've agreed than I'll say there is no objection." The instruction was given to the jury.

## I.

In her brief before us, plaintiff points to the response of defendant's counsel and argues that the objection to her instruction No. 15 which is being asserted in this appeal was not made in the trial court. No reply

brief has been filed by defendant; but we assume that the rewritten instruction was examined by defendant's counsel and he found that it had been retyped as agreed upon. Therefore, it appears that when plaintiff's rewritten instruction was tendered, defendant expressed no objection.

■■ Section 67(3) of our Civil Practice Act requires that "[t]he court shall hold a conference with counsel to settle the instructions and shall inform counsel of his proposed action thereon prior to the arguments to the jury." (Ill. Rev. Stat. 1969, ch. 110, par. 67(3).) It is provided in Supreme Court Rule 239(b) that "[c]ounsel may object at the conference on instructions to any instruction prepared at the court's direction, regardless of who prepared it, and the court shall rule on these objections as well as objections to other instructions. The grounds of the objections shall be particularly specified." (Ill. Rev. Stat. 1969, ch. 110A, par. 239(b).) The purpose of a jury instruction conference is to afford the parties an opportunity to object to instructions they claim are erroneous. (*Smelcer v. Sanders,* 39 Ill.App.2d 164, 172, 188 N.E.2d 391.) The objections have to be specific. (*Johnston v. Basic,* 16 Ill.App.3d 453, 306 N.E.2d 610.) With such an opportunity, a party cannot sit idly at an instruction conference, permit the jury to receive an instruction without specific objection and then for the first time in a post-trial motion or in an appeal make the claim that error was committed in instructing the jury. (See *Onderisin v. Elgin, Joliet & Eastern Ry. Co.,* 20 Ill.App.2d 73, 155 N.E.2d 338; *Arboit v. Gateway Transportation Co.,* 15 Ill.App.2d 500, 146 N.E.2d 582.) Even in a criminal case, where the trial judge ordered a tendered instruction rewritten and when it was presented defendant's counsel expressed no objection, it was held that this was an express disclaimer of objection; it waived defendant's right to question the correctness of the instruction in his post-trial motion; and the issue concerning error in giving the instruction was not preserved for review. (See *State v. Jackson* (1974), —— Iowa ——, 223 N.W.2d 229.) Therefore, we conclude that defendant's counsel did not specifically object to plaintiff's instruction No. 15 during the jury instruction conference, and as a consequence defendant will not be heard in this appeal to complain that the trial court committed reversible error in the instruction it gave the jury. *Olofsson v. Wood,* 23 Ill.App.2d 32, 161 N.E.2d 681; *Rhodes v. Oliva,* 13 Ill.App.3d 849, 301 N.E.2d 126.

## II.

When she testified, plaintiff told the jury how she fell from defendant's vertical ladder. She admitted being familiar with it and having used it on 50 or 60 occasions prior to the day she was injured. She said that on occasion people with whom she worked had expressed the thought that

the ladder was dangerous. Yet, she continued to use it. From these admissions, defendant argues that as a matter of law plaintiff was guilty of contributory negligence when she was injured. In support, defendant cites a number of Illinois decisions, which we have examined.

██ We notice, however, that one was a case in which the doctrine of assumption of risk was applied to determine the liability of an employer to his employee.[1] Another involved the collision of two automobiles.[2] Still another was a case in which the dispositive issues were whether defendant was negligent and whether that negligence proximately caused the decedent's injuries.[3] Two were cases involving causes of action for products liability.[4] Four were cases in which the injured plaintiff, by his own choice, elected to follow a course of conduct which the court held was contributory negligence as a matter of law.[5] In this case, defendant maintained a theater whose stage lights were controlled in a booth to which the only access was the vertical ladder in question. It is a case in which defendant furnished plaintiff with only one course of conduct, use of that ladder. Of course, it is true that a party may through his own testimony conclusively bar his claim or his defense, but a determination that he had done so depends on an evaluation of all his testimony, not just part of it, together with an appraisal of that testimony in the light of all the facts and circumstances of the case. (*Carter v. Winter*, 32 Ill.2d 275, 204 N.E.2d 755; McCormick on Evidence § 266 (2d ed. 1972); 9 Wigmore on Evidence § 2594(a) (3d ed. 1940).) When we here follow this rule, it becomes readily apparent that plaintiff did not know of the 2-inch deficiency in the distance of the ladder from the wall as required by prevalent standards governing erection of such means of access. Plaintiff did not say she knew why her fellow workers characterized the ladder as dangerous. The jury had a photograph from which it could have found that it was the ladder's perpendicular position that caused some of plaintiff's fellow workers to consider it dangerous. The question therefore arises whether at the time plaintiff used the ladder and was injured she was acting as a reasonable and prudent person.

Whether, in a given case, the conduct of an injured person was con-

---

[1] *Nosal v. International Harvester Co.*, 187 Ill.App. 411 (abstract decision).

[2] *Carter v. Winter*, 32 Ill.2d 275, 284, 204 N.E.2d 755, 759.

[3] *McInturff v. Chicago Title & Trust Co.*, 102 Ill.App.2d 39, 47, 243 N.E.2d 657.

[4] *Day v. Barber-Colman Co.*, 10 Ill.App.2d 494, 511, 135 N.E.2d 231, 239.
*Fore v. Vermeer Manufacturing Co.*, 7 Ill.App.3d 346, 287 N.E.2d 526.

[5] *Wills v. Paul*, 24 Ill.App.2d 417, 422, 164 N.E.2d 631, 634.
*Withey v. Illinois Power Co.*, 32 Ill.App.2d 163, 170, 177 N.E.2d 254, 259.
*Ferguson v. Lounsberry*, 58 Ill.App.2d 456, 462, 207 N.E.2d 309, 312, 313.
*Tompkins v. Twin Oaks Dairy, Inc.*, 91 Ill.App.2d 88, 93, 234 N.E.2d 403, 405.

tributory negligence is preeminently one for the jury, and the issue becomes a question of law only when the undisputed evidence conclusively proves that the accident resulted from the negligence of the injured party and that the injury or injuries could have been avoided by use of reasonable precautions. (*Hargis v. Standard Oil Co.*, 10 Ill.App.2d 119, 134 N.E.2d 518.) Where, however, reasonable men acting within the limits prescribed by law might reach different conclusions or draw different inferences from the facts, the question whether certain conduct was contributory negligence is for the jury. (*Packard v. Kennedy*, 4 Ill.App.2d 177, 124 N.E.2d 55.) In our judgment, plaintiff's testimony, appraised in the light of all the facts and circumstances of the case, did not prove as a matter of law that her conduct at the time of her injuries was contributory negligence. This was a question, of fact. Compare *Day v. Barber-Colman Co.*, 10 Ill.App.2d 494, 135 N.E.2d 231.

## III.

It was also a question of fact whether plaintiff's injuries were caused by defendant's negligence. Bearing on this issue, plaintiff testified concerning her knowledge of the vertical ladder and its use. The engineer described to the jury how the vertical ladder had been so constructed for defendant that it was 2 inches nearer the wall than was allowed by existing safety standards. Plaintiff's architect told the jury that for a room whose access was frequently needed by those who worked in defendant's theater the vertical ladder did not comply with Chicago Municipal Code provisions. He gave his opinion that a stairway should have been furnished by defendant, one that would cost $640. In her amended complaint, plaintiff alleged defendant's failure to comply with certain ordinances that governed the maintenance of buildings. Without objection from defendant, the trial court instructed the jury that one of plaintiff's claims was that defendant had "[f]ailed to construct, provide and maintain a stairway to the light-control booth, in violation of a certain ordinance of the city of Chicago."

In the record we have examined, plaintiff's evidence is uncontradicted. No witness called by defendant disputed plaintiff in any way concerning her description of the fall she experienced from defendant's vertical ladder. None disputed the testimony of her engineer witness that the ladder did not comply with known safety standards prevalent in the city of Chicago at the time of plaintiff's injuries. Nor did any witness for defendant dispute plaintiff's evidence that the ordinances of the city of Chicago governed the means of access to the light-control booth. In fact, defendant's architect admitted that the testimony of plaintiff's witnesses concerning the ordinances and the safety standards was correct. He sup-

ported the views of plaintiff's architect witness when he said that had he known that there would be a frequent need for access to the light-control booth, he would have recommended construction of a stairway.

■■■ It is not disputed that when plaintiff was injured she was on defendant's land by its express invitation in connection with its business and in a relationhip where there was a mutuality of benefit. Under these circumstances she was an invitee. (*Madrazo v. Michaels,* 1 Ill.App.3d 583, 586, 274 N.E.2d 635.) An owner or occupant of land who, by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by his negligent failure to keep the land or its approaches in a reasonably safe condition. (*Steinberg v. Northern Illinois Telephone Co.,* 260 Ill.App. 538; Restatement of Torts § 343 (1934).) In this case, where plaintiff's suit was based on allegations of defendant's negligence, and there was evidence that tended to prove the material averments of the amended complaint as to such negligence, the question whether plaintiff's injuries were caused by defendant's negligence was for the jury. (See *Wright v. Stech,* 7 Ill.App.3d 1068, 288 N.E.2d 648; *Holsman v. Darling State Street Corp.,* 6 Ill.App.2d 517, 128 N.E.2d 581.) In our judgment, the evidence in this record amply supports the jury's verdict that plaintiff was injured as a result of defendant's negligence. (*Geraghty v. Burr Oak Lanes,* 5 Ill.2d 153, 125 N.E.2d 47; *Hargis v. Standard Oil Co.,* 10 Ill.App.2d 119, 134 N.E.2d 518; compare *Holt v. A. L. Salzman & Sons,* 88 Ill.App.2d 306, 232 N.E.2d 537.

## IV.

By its post-trial motion, defendant moved for judgment in its favor notwithstanding the jury's verdict, or in the alternative, for a new trial. The motion was denied. In this court, defendant pursues the issue whether it was entitled to judgment notwithstanding verdict or in the alternative a new trial. The issue, in our opinion, must be resolved against defendant.

■■■ A judgment notwithstanding the verdict should be entered only where all the evidence, viewed most favorably to the party opposing such judgment, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504.) And as a court of review, we will set aside a verdict as being against the manifest weight of the evidence only when it is obvious, or clearly evident, that the jury arrived at an incorrect result. (*McDonald v. Frontier Lanes, Inc.,* 1 Ill.App.3d 345, 272 N.E.2d 369.) It is error for us as an appellate court to reverse a judgment in favor of the plaintiff and direct entry of judg-

ment for defendant notwithstanding verdict where the jury made a correct determination of the facts. (*Geraghty v. Burr Oak Lanes, Inc.,* 5 Ill.2d 153, 125 N.E.2d 47.) Our review of the record convinces us that the jury's verdict is supported by the evidence; no facts are shown by defendant which would warrant a ruling in its favor notwithstanding verdict or a reversal for a new trial. Therefore, the judgment is affirmed.

Affirmed.

STAMOS and HAYES, JJ., concur.