JEFFREY STEPHENSON, Plaintiff-Appellant, *v.* DREIS & KRUMP
MANUFACTURING COMPANY, Defendant-Appellee.

Third District    No. 81-92

Opinion filed November 12, 1981.

James Canfield, of The Canfield Law Offices, of Rockford, for appellant.

Robert J. Noe, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Jeffrey Stephenson, the plaintiff, was employed at Drive's, Inc., as a press operator. He was injured while operating a press manufactured by Dreis & Krump Manufacturing Company on August 9, 1977, his second day on the job.

Prior to obtaining this employment, the plaintiff had worked on a press at another plant for approximately 4-5 months. Upon being hired by Drive's, Stephenson was furnished a booklet of safety material including instructions specifically directed to press operators. There was a section in the material spelling out the steps an operator was to take when clearing an obstruction in the machine.

The plaintiff testified that he had read the safety material and understood it prior to reporting for work. He also received on-the-job training and instruction from Larry Bell, operator of the press in question, and Robert Banse, group leader.

Among the instructions given to the plaintiff was the procedure to be followed when clearing the press or when a portion of the operator's body was to be placed under the ram, to-wit:

1. Depress stop button for motor.
2. Stop flywheel with brake or wait for it to stop.
3. Depress safety switch on right side.
4. Pull interlocked safety block from plug.
5. Insert safety block under ram.
6. Open safety gate.
7. Use clearing tools.

The plaintiff admitted that he was aware of the danger in placing a portion of his body under the ram without taking these precautions but voluntarily proceeded to put his arm in the machine while attempting to clear it, even though he had not depressed the stop button for the motor, stopped the flywheel or waited for it to stop or used the safety block.

The ram descended on the plaintiff's right arm resulting in the injury (amputation) giving rise to an action for personal injury based upon strict tort products liability. There was testimony that this could have occurred only if the plaintiff had his foot on the foot switch and that he also came into contact with the switch on the safety gate when reaching into the machine.

There was no malfunction in the press when it was checked after the incident, and it has been used every day since without problem.

The straight side press was multifunctional and was manufactured without a point of operation.

After its arrival at the plant the press was wired by Drive's personnel

and an automatic side feeding mechanism was added. In later years additional safety devices were added including an electrically interlocked safety block, a safety gate or barrier guard which was also electrically interlocked and a block upon which the foot switch was mounted to lessen the possibility of it being inadvertently depressed.

At trial, Stanley Sedivy of Safety and Forensic Engineering, Chicago, Illinois, testified on behalf of the plaintiff. He said the press was unreasonably dangerous because of the nature of the stop button and clutch control circuitry. This was a theory developed after he had issued his initial report. He also cited the point of operation protection.

On the other hand, Donald Wandling, a consulting engineer from Ames, Iowa, testified on behalf of the defendant. He was of the opinion that the press was not unreasonably dangerous because it complied with industry and American National Standards Institute (ANSI) standards which were in effect on the date of the incident. Mr. Wandling further stated that the point of operation protection which had been provided on the press was adequate. This testimony was buttressed by the opinion of Emmet McCarthy, vice president of Dreis & Krump.

The jury returned a verdict in favor of the defendant, and this appeal followed.

The appellant contends on appeal that the verdict is against the manifest weight of the evidence; that the trial court erred in allowing defense counsel to reopen its case to permit certain statements in plaintiff's discovery deposition to be read to the jury; that the trial court erred in allowing defendant's affirmative defense of assumption of the risk to go to the jury and alternatively, if no error occurred in allowing the jury to consider the defense of assumption of the risk, in failing to give plaintiff's tendered instruction regarding this affirmative defense.

Our review of the evidence and the issues raised on appeal leads us to conclude that the evidence presented contains ample support for the verdict of the jury.

■■ Questions of fact are to be resolved by the jury, and the jury determination is not to be disturbed on appeal unless it is clearly and palpably against the manifest weight of the evidence.

It is basic to our system that fact questions are to be decided by the jury. (*Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Com.* (1966), 34 Ill. 2d 544, 216 N.E.2d 788.) The jury verdict should not be disturbed on appeal unless it is clearly and palpably contrary to the manifest weight of the evidence. *Ostendorf v. Brewer* (1977), 51 Ill. App. 3d 1009, 367 N.E.2d 214.

A fact question was presented by conflicting expert testimony concerning whether or not the press, as it left the control of the defendant,

was or was not defective and unreasonably dangerous. Further, there was evidence in the record upon which the jury could conclude the plaintiff was not operating the machine in a reasonably foreseeable manner.

Pursuant to the theory contained in the plaintiff's complaint, the plaintiff attacked the press as being unreasonably dangerous by virtue of the fact that it contained separate electrical circuits for the clutch and the motor and because it lacked adequate point of operation protection. The record contains extensive expert testimony on these points and detailed description of the safety appliances on the machine at the time of the incident.

The jury heard all of this evidence, some of which was conflicting, and had a basis for concluding that the press was not defective or unreasonably dangerous and/or that the plaintiff was not operating it in a manner reasonably foreseeable by the defendant.

■■ Mr. Wandling and Mr. McCarthy, both of whom had inspected the press and were familiar with applicable industry standards, testified that the press was wired in a manner consistent with the state of the art in 1959, the year of manufacture, and that there was nothing defective or unreasonably defective about the way it was wired. They further testified that a multifunctional machine, such as the one in question, does not have a point of operation when it leaves the control of the manufacturer; this depends on the use to which the press is put by the owner. Accordingly, the furnishing of point of operation protection is commonly performed by the user. This was done in the present case with the addition of two electrically interlocked devices—the safety block and the safety gate (barrier guard). Of course, once a safety device is attached to the machine by the employer, even if an unreasonably dangerous condition existed when the machine left the control of the manufacturer, it was fully corrected and thus nonactionable. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232; *Flores v. U.S. Industries, Inc.* (1980), 81 Ill. App. 3d 944, 401 N.E.2d 979.) The defendant presented expert testimony that such devices afforded reasonable protection for operators.

While the plaintiff produced some contrary expert testimony by Mr. Sedivy, at best it can be said this created a fact question which was resolved by the jury. It should be noted that Mr. Wandling testified that none of the point of operation devices suggested by the plaintiff's expert would have been feasible as this machine was being used.

In addition, there was nothing presented to refute the testimony of Mr. McCarthy for the defendant that a press manufacturer anticipates the operator will follow proper procedure and use available safety equipment. It was undisputed that the plaintiff did not follow the procedures established by his employer or use the safety equipment which was

provided. Thus there is ample support for a jury determination that the plaintiff failed to sustain the burden of proving that the product was being used in a reasonably foreseeable manner. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

The contention of the plaintiff that the verdict is contrary to the manifest weight of the evidence is without merit.

■■■ We note that with respect to appellant's second issue presented for review, one of the purposes for which discovery deposition testimony may be used at trial is being read into evidence as an admission. The trial court has discretion in deciding whether or not to allow a party to reopen its case.

The plaintiff contends that the trial court erred in allowing the defendant leave to reopen its case for the purpose of reading into evidence a portion of the Stephenson deposition as an admission. This pertained to the prior experience of the plaintiff as a press operator.

The decision of the trial judge to allow the case to be reopened is clearly discretionary. (*Continental Illinois National Bank & Trust Co. v. Village of Park Forest* (1972), 4 Ill. App. 3d 811, 282 N.E.2d 167.) In fact, the plaintiff also was allowed to reopen his case. It is argued, however, that the material read to the jury is irrelevant because of alleged differences in the two presses and that the material should not have been used both for impeachment purposes and as an admission.

■■■ An admission is an out-of-court statement made by a party which is admissible in evidence against that party. (Gard, Illinois Evidence Manual R. 15:01 (2d ed. 1979).) Certainly the sworn testimony of the plaintiff concerning his prior experience in the operation of presses is relevant in a case where the state of his knowledge is in issue and the material read into evidence fits the textbook definition.

If there were differences in the presses it was proper for the plaintiff to explain this fact, and he did so. (*Hudson v. Augustine's, Inc.* (1966), 72 Ill. App. 2d 225, 218 N.E.2d 510.) However, this testimony goes to the weight, not the admissibility of the admission. *Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 170 N.E.2d 393.

■■ As to the argument that the deposition should not have been read as an admission after having been used for impeachment purposes, it should be noted that only a portion of the material was used when impeaching the plaintiff and that Supreme Court Rule 212 permits a discovery deposition to be used for both impeachment and as an admission. (Ill. Rev. Stat. 1977, ch. 110A, par. 212.) There is no prohibition against using the same deposition for both purposes where appropriate.

■■ We believe that no reversible error was committed in allowing the defendant to reopen its case and read the admission into evidence.

We further believe that the trial court was correct in denying the motion for directed verdict filed by the plaintiff concerning the issue of assumption of risk.

The issue of assumption of risk was interjected in the case upon the filing of an answer containing this affirmative defense on January 3, 1978. The plaintiff at no time moved to strike this defense, even though an answer to affirmative defenses was not filed until approximately one month prior to trial, on November 6, 1980. Substantial discovery had been completed by that date. However, at trial, upon the conclusion of all evidence the plaintiff moved for a directed verdict on the issue of assumption of risk. The trial court was thus required to apply the well-known *Pedrick* rule:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

The record in this case not only supports the decision of the trial judge in denying the motion for directed verdict, but also provides a basis for supporting the ultimate jury verdict in favor of the defendant.

■■ An individual assumes a risk when that person recognizes and understands the dangerous condition of a product and yet voluntarily proceeds to use the product in disregard of this known danger. Assumption of risk is a well-recognized defense in the field of products liability law. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857; Restatement (Second) of Torts §402A, comment n (1965).

In *Ralston v. Illinois Power Company* (1973), 13 Ill. App. 3d 95, 98, 299 N.E.2d 497, 499, the court pointed out:

> "Essentially, an individual assumes a risk when that person recognizes and understands the dangerous condition of a product and yet voluntarily and unreasonably proceeds to use the product 'in disregard of this known danger.' (*Sweeney v. Matthews & Co.*, 46 Ill. 2d 64, 66, 264 N.E.2d 170, 171.) In other words, the party expressly or implicitly consents to taking his chances of harm from a particular risk known to him and created by a manufacturer. *Denton v. Bachtold Bros., Inc.*, 8 Ill. App. 3d 1038, 291 N.E.2d 229."

It should be noted that in all these cases the courts held the plaintiff barred by virtue of assumed risk as a matter of law. Accordingly, in the present case there is ample support for a jury verdict in favor of the defendant.

Finally, the plaintiff argues that the giving of defendant's tendered instruction which defined assumption of the risk constitutes reversible error. This was the burden of proof instruction.

The record reveals that initially each of the parties tendered a burden of proof instruction. The plaintiff's instruction failed to state that the plaintiff must show that the press was being operated in a manner reasonably foreseeable by the manufacturer and did not include reference to the second affirmative defense (failure to mitigate damages). This instruction was refused because it was incomplete. The plaintiff stated certain objections to defendant's instruction, none of which are now being asserted. Defendant's initial instruction was refused, and an amended instruction was tendered by the defendant which eliminated all portions of the former instruction to which objection had been voiced. The plaintiff made no further objection to the instruction and tendered no further instruction pertaining to the burden of proof.

■■ The purpose of the conference on instructions is to give counsel an opportunity to object to any proposed instruction. (*Smelcer v. Sanders* (1963), 39 Ill. App. 2d 164, 188 N.E.2d 391; *Johnston v. Basic* (1973), 16 Ill. App. 3d 453, 306 N.E.2d 610.) Given such an opportunity, a party cannot allow the jury to receive an instruction without specific objection and then for the first time in a post-trial motion or an appeal claim that error was committed. (*Lewis v. Hull House Association* (1975), 25 Ill. App. 3d 617, 323 N.E.2d 600.) This is what the plaintiff is attempting to do in this case, since the objection was made for the first time in the post-trial motion. The point has been waived.

For the foregoing reasons, the judgment of the Circuit Court of Whiteside County is affirmed.

Affirmed.

BARRY and ALLOY, JJ., concur.