CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee under several Trust Agreements, *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF PARK FOREST, Defendant-Appellee.

(No. 71-61;

Third District—March 16, 1972.

*Rehearing denied May 17, 1972.*

812

Herschbach, Tracy, Johnson & Wilson, of Joliet, (Wayne Johnson, of counsel,) for appellants.

Harry Leinenweber, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs in this action, suing as taxpayers, water users and bond holders, filed a complaint (in 8 counts) asking for a declaratory judgment and ancillary injunctive relief. The complaint asserts that an agree- between the defendant Village of Park Forest and Desa Industries was invalid, and also sought a declaratory judgment that defendant Village of Park Forest had not properly complied with enabling legislation enacted by the Illinois General Assembly with respect to a contemplated sewer extension outside its municipal boundaries. Plaintiffs requested that defendant Village be permanently enjoined from proceeding with the project. The Circuit Court dismissed all of the counts of the complaint, pursuant to motion of the defendant, with the exception of Count III. Following a bench trial on the merits of Count III, the trial court entered judgment thereon for defendant.

On appeal in this Court, plaintiffs contend that the Circuit Court erred in dismissing Counts I, II, IV and V of the complaint and likewise erred in entering judgment for defendant as to Count III. No issues are raised as to the court's action on the remaining counts and it will not be necessary that we discuss such counts in this opinion.

It is apparent from the record that defendant Village of Park Forest entered into a contract with Desa Industries, Inc., a corporation, which owned a tract of and about one-half mile south of defendant's corporate limits. The contract provided that defendant would extend its sanitary

sewer to the Desa Industries' tract and that the industry would pay for the sewer service substantially in the same manner or amount as other taxpayers within the defendant's corporate limits were taxed for such service. The agreement also specified that Desa Industries would not petition or agree or permit the annexation of the tract involved to any other municipal corporation without first petitioning for annexation to defendant Village of Park Forest. The Village trustees on October 14, 1969, unanimously authorized the defendant Village to enter into the agreement and so ratified such agreement.

The complaint of plaintiff was filed in the Circuit Court on December 17, 1969. After the filing of the complaint, in furtherance of the intention of the Village to provide the industry tract with sanitary sewer facilities, construction and maintenance easements were obtained from record owners of the real estate through which the proposed facility was to be built. In three of such easements the grantors were given a unilateral right to tap into the sewer facility at such time as it was constructed but subject to the provisions of relevant local ordinances. A petition for service was received from Barbara Z. Slaney. Such petition for service together with the agreement from Desa Industries involved the only requests or petitions for sewer service which were sought to be introduced before the trial court prior to the time when the taking of evidence was originally closed in the trial court. On motion of defendant, however, and over objection of plaintiffs, the case was subsequently reopened for the purpose of admitting evidence of certain additional petitions for service which had been obtained after the hearings had been closed.

Defendant Village enacted its Ordinance No. 792 on December 2, 1970, which provided for an extension of a sanitary sewer system along a specified route beyond its corporate limits (along Western Avenue from a point where Western Avenue intersects the corporate limits of the Village on the south, southward to Norfolk Road). Thereafter, on December 28, 1970, defendant enacted Ordinance No. 794 which specified the legal description of the Desa Industries tract and another tract of real estate outside the corporate limits of the Village which was owned by Barbara Z. Slaney, as the area to be served outside the corporate limits by the contemplated sewer extension. The ordinance recited that defendant Village had received petitions from these two property owners requesting sewer service. (It appears from the record that defendant Village regarded the agreement with Desa Industries as that corporation's petition for service. The petition for service of Barbara Z. Slaney had been obtained on February 17, 1970.)

At the trial, testimoney was presented with respect to the feasibility of the project (from an economic and ecological standpoint), the con-

struction costs, and the areas which could be served by the extension given its contemplated physical capacity. It appears from such evidence that a much larger area could be served by the proposed extended sewer facilities than that actually specified in Ordinance No. 794. Since the stay order preserving the *status quo pendente lite* had been granted by the trial court pending disposition of this cause on appeal, defendant has not yet commenced construction of the sewer facilities referred to outside the corporate limits.

In support of Count III of the complaint, plaintiffs initially contend that defendant had not at the time of the trial, or to date complied with the enabling legislation permitting municipalities to extend and maintain sewer facilities outside their geographical corporate limits. The statute involved (in its relevant part) is as follows:

"The corporate authorities of a municipality may provide by ordinance for the extension and maintenance of municipal sewers * * * in specified areas outside the corporate limits. Such service shall not be extended, however, unless a majority of the owners of record of the real property in the specified area petition the corporate authorities for the service." (1969 Illinois Revised Statutes, ch. 24 par. 11—149—1).

■■ Since Ordinance No. 792 enacted on December 2, 1970, merely establishes the route of the contemplated sewer extension, and since the resolution of October 14, 1969, merely ratified the agreement with Desa Industries, there was no specific compliance with the statute prior to the enactment of Ordinance No. 794. Ordinance No. 794, however, specifies certain areas to be served outside the corporate limits (*viz.*, the Desa Industries property and that owned by Barbara Z. Slaney) and such ordinance likewise recites that petitions for service had been obtained prior thereto from those property owners. As we have observed previously, it was shown that a petition for service had been obtained from Barbara Z. Slaney and we also conclude that the agreement between defendant and Desa Industries amounted to a petition for service by Desa Industries and would suffice for such purpose. It, therefore, appears that defendant Village had duly complied with enabling legislation requiring the specification of the areas to be served and the aquisition of the petitions for service from a majority of the owners of record in the specified area.

■■ Plaintiffs maintain that Desa Industries and Slaney properties only comprise a small fraction of the area which can be served by the sewer facilities of the capacity contemplated, and that defendant had already agreed to service a larger area than that area specified in Ordinance No. 794 by virtue of the Village having permitted certain grantors of construction and maintenance easements and others to tap into the

sewer line when the same is constructed. We do not believe that this argument is sound. In our judgment the enabling legislation permits the corporate authorities to exercise legislative discretion to determine, in the judgment of such authorities, the area to be served by the extended facilities. Under the General Assembly Act, it is only after such discretionary determination is made publicly, through enactment of an ordinance, that the authorities are required to obtain petitions for service from a majority of the owners of record of the area specified by the corporate authorities and then only before such service is actually extended. There is nothing to prevent the corporate authorities who are thus vested with a substantial discretion, to determine the means of accomplishing the objective in extending sewer facilities to specified areas. With respect to the capacity of the contemplated facilities, it is apparent that the municipality clearly has a right to determine the means of accomplishing the objective in extending its service facilities to specified areas. Any other conclusion would subject the municipality to limitations by adversary proceedings so as to thwart the exercise of its discretion in an area where the Illinois General Assembly has, in our judgment, granted municipalities plenary power. The Act, we believe, was to give citizens of municipalities public notice of the intentions of the governing bodies, and, also, to prevent a municipality from physically extending sewer facilities beyond its corporate boundaries where such facilities are not desired by a majority of those owning real estate in the area specified by the municipal authorities. It is apparent that the General Assembly recognized the need for vesting municipalities with the power to extend sewer facilities beyond the municipal boundaries. The broad discretion granted municipal authorities was a practical recognition of the need for efficient planning in light of increasing suburban and industrial development and growth and of the need for sewage disposal in a most efficient and effective manner. Both economic and ecological considerations clearly motivated the broad grant of authority to extend sewer facilities, limited only by the need to obtain the assent of a majority of real estate owners in the area to be served. Apprehensions expressed by plaintiffs we do not believe are realistic, particularly in view of the fact that corporate authorities are always, sooner or later, made subject to the wishes of the electorate. We read nothing in the Act which would give individuals or groups of taxpayers a power to limit the exercise of municipal legislative discretion in expanding sewer facilities in compliance with the Act.

■■ We, therefore, conclude that by enacting Ordinance No. 794 and by obtaining petitions for service from all of the owners of the real estate specified in the Ordinance, defendant Village of Park Forest has com-

plied adequately with the mandate of the enabling legislation involved. The circumstance that it granted unilateral "tap-in" rights to certain others along the route of the new facility from whom construction and maintenance easements had been obtained, would not affect our determination since Ordinance No. 794 was obviously not enacted with their properties in mind. The legislative determination was made to serve Desa Industries and the Slaney properties with sewer facilities, and any other agreements made with other owners along the line of the facility were necessarily incidental to and in support of that objective.

■■ Since we have determined that defendant's Ordinance No. 794 complied with the requirements of the enabling legislation, it would not have been necessary to deal with plaintiffs' contention that the trial court abused its discretion in allowing reopening of proof to receive additional evidence on behalf of defendant. We should observe, however, that the opening of the case for the purpose of introducing further evidence obviously rested in the sound discretion of the court, particularly where injunctive relief was sought as was true in this case.

■■ Count I of plaintiffs' complaint alleges that the September 29, 1969 agreement between the defendant Village and Desa Industries amounts to an illegal pre-annexation agreement and plaintiffs maintain that the trial court erred in dismissing it on the motion of defendant. While the agreement does specify that Desa Industries will not petition for or permit annexation of the tract of land in question to another municipality without first petitioning defendant for annexation in accordance with existing Illinois law, we note that under current Illinois law, until such time as the tract in question becomes contiguous to defendant's boundary, no annexation of the tract to defendant could be effected. (Ill. Rev. Stat. 1971, ch. 24 par. 7—1—1, et seq., par. 11—15.1, et seq.). As we read the agreement, if the tract at some future date becomes contiguous to another municipality before becoming contiguous to defendant's boundary, Desa Industries would not be precluded by this agreement from requesting the annexation of the tract to that municipality. A request for annexation to defendant by a non-contiguous owner would be meaningless. The commitment of Desa Industries to request annexation to defendant before seeking annexation to another municipality is, in legal contemplation, a nullity until the tract in question becomes contiguous to defendant's boundary. We agree with defendant that under this agreement there is, at this juncture, no way that Desa Industries may compel its properties' annexation by defendant, and there is no manner in which defendant may unilaterally compel Desa Industries to seek annexation of the property to the Village. The trial court's action in dismissing Count I of the complaint was, therefore, correct.

■■ Count II of the complaint questions the constitutionality of the enabling legislation set forth earlier in this opinion. (Ill. Rev. Stat. 1969, Ch. 24 par. 11—149—1.) Prior to 1969 and the passage and approval of House Bill 2080 by the 76th General Assembly and the Governor, a municipality had no authority to extend sewer facilities beyond its corporate boundary unless such municipality's water facilities were also serving the areas in question. (Ill. Rev. Stat. 1967, ch. 24 par. 11—149—1.) Since defendant apparently does not serve the area specified here with water, if House Bill 2080 which ultimately became the 1969 Statute was not validly enacted, the project under consideration must fail, or at least be postponed. Under section 13 of article IV of the 1870 Constitution of Illinois, it is provided that every bill shall be read "at large on three different days, in each house, and the bill and all amendments thereto shall be printed before the vote is taken on its final passage * * *". Plaintiffs maintain in this court that House Bill 2080, as finally amended, was not enacted in accordance with this mandate insofar as the action of the House of Representatives was concerned. The House Journal with respect to this bill which under the 1870 Constitution represents the only competent evidence of its parliamentary history (*Sangamon Fair Association v. Standard,* 9 Ill.2d 267, 276), indicates that House Bill 2080 was read at large for the first time on Tuesday, April 22, 1969; for the second time on May 13, 1969; and for the third time on May 19, 1969. Further consideration of the bill, however, was postponed on the latter date, and on May 29, 1969, it was recalled from the order of third reading to the order of second reading for the purpose of amendment. On that same day an amendment was offered, approved by unanimous vote, and ordered printed. The bill, as amended, was then again advanced to the order of third reading. There is no specific indication in the House Journal that the bill as amended was ever read again before passage. The House Journal, however, does indicate that the House proceeded with the bill "on third reading" and then having been "transcribed and typed any amendment adopted thereto having been printed, * * * was again taken up in the order of its passage."

■■ The Supreme Court of this State has on many occasions held that germane amendments may be made to a bill during its parliamentary sojourn without such bill, as amended, being read three times. (*Giebel-Hausen v. Daley,* 407 Ill. 25, 46; *People ex rel. Gibbons v. Clark,* 296 Ill. 46; *Stephenson v. Montgomery,* 263 Ill. 93.) There is no contention in this court that the amendment to House Bill 2080 was not germane thereto, and there is thus no question with respect to that issue. Plaintiffs complain, however, that the House Journal does not indicate that the bill, as amended, ever received any at large reading. In *Dragovich v.*

*Iroquois Iron Co.,* 269 Ill. 478, it was argued that a bill had not been constitutionally enacted into law for the reason that the House Journal did not affirmatively state that certain amendments to the bill had been printed, but rather stated only that such amendments were "ordered printed." The Supreme Court rejected the attack on the bill, stating (at pp. 481—2) that the constitution "does not require that the legislative journal shall show affirmatively that the bill or its amendments have been printed. In discussing this question in *Chicago Telephone Co. v. Northwestern Telephone Co.,* 199 Ill. 324, we said (p. 342): 'Where the constitution does not require a fact to be recorded upon the journal and it can be inferred from the recital in the journal that such fact existed or such step was taken, then the presumption will be indulged that such fact did exist or such step was taken in order to sustain the validity of the law, where the contrary does not appear from the journal itself.'" The recital in the journal that the amendments to the bill had been ordered printed was thus held as sufficiently implying that they had indeed been printed.

■■ We believe that a similar situation exists in the case before us since the 1870 Constitution does not specifically require that the three at-large readings of the bill be affirmatively recorded in the journals, and the recitation in the House Journal that the House proceeded with the bill on third reading, and then again took it up in the order of its passage, in our judgment, allows a reasonable inference that the bill, as amended, was indeed read for a third time. (See also, *People v. Dental Examiners,* 278 Ill. 144, 148, where recitals in the House Journal indicated a bill was ordered to a second reading and it was called up in the order of second reading and that it was called up and read at large a third time, were held to be adequate to support the inference that the bill had been read at large a second time.) We, therefore, conclude that the trial court's dismissal of Count II of plaintiffs' complaint was not erroneous.

■■ It is further contended that the trial court erroneously dismissed Count IV of the complaint which attacks the sufficiency of defendant's appropriation ordinance concerning the expenditures for the proposed extension of its sewer facilities. Plaintiffs attached a copy of the appropriation ordinance as an exhibit to the complaint. We note from such exhibit that there are several major topics, one of which is labeled "Public Improvements". The appropriation in question appears as a subtopic under such heading and reads "Construction of Sanitary Sewers (Contract)—$400,000.00". It is suggested by plaintiffs that this item is so lacking in specification as to amount to no appropriation at all, violating the taxpayers right to have, separately listed, the purpose for which public moneys are to be expended. In support of their petition, plaintiffs

cite the cases of *Siegel v. City of Belleville,* 349 Ill. 240 and *People v. Wabash Railroad Co.,* 395 Ill. 243. The *Siegel* case stands for the proposition that a purported municipal appropriation listed as: "Fire Department—$34,000.00; Fire Department, Two Mill Tax, $36,000.00; Fire Department, Foreign Fire Insurance, $13,500.00" was insufficiently specific in purporting to authorize the purchase of a fire engine. Such case is clearly inapplicable here for nothing whatever was said in that appropriation ordinance about the purchase of a fire engine, whereas it is specified, in the instant case, that the expenditure would be for the construction of sanitary sewers. In the *Wabash* case referred to, the Supreme Court held, *inter alia,* that an appropriation specified as "Election expense for Ballots, Poll Books and fees of Judges and Clerks, $6,000." properly withstood attack on grounds of indefiniteness and lack of specificity. In reaching that determination, the court relevantly observed (at pp. 247—248):

> "The right of a taxpayer to have stated separately the purposes for which public money is appropriated or a tax levied is a substantial right of which he may not be deprived. * * * The object of statutes requiring a separate statement of the purposes for which taxes are levied is to give the taxpayer information and also an opportunity, if he desires it, to object to unjust and illegal levies and assessments. * * * On the other hand, it is equally well settled that itemization requirements of a taxing statute must receive a practical and common-sense construction, * * * and that there is no valid objection to levying a single sum for several purposes which are embraced within some general designation giving the necessary information to the taxpayer * * *."

In the instant case, a taxpayer reading the appropriation ordinance would assuredly be advised that the expenditure in question was for construction of sanitary sewers, for one purpose, and we believe that such itemization was sufficiently specific so as to enable plaintiffs-taxpayers to recognize the object of the appropriation. Appropriation ordinances cannot be required to minutely particularize expenditures, such as, in the case before us, by specifying the routes of a proposed sewer facility. It is enough that the appropriation ordinance advises the taxpayer of the type of expenditure which will be made, so that he may make further specific inquiry with regard thereto should he so desire.

■■ Plaintiffs further argue on this point that since the appropriation ordinance was enacted prior to the effective date of the enabling legislation giving the municipality the right to extend its sewer facilities outside its corporate limits in the areas not already served by its water facilities

(Ill. Rev. Stat. 1969, ch. 24, par. 11—149—1), the ordinance necessarily should have specified the area where the facilities were to be built so that a taxpayer could determine from the ordinance whether the authorities were contemplating illegal expenditures. We do not believe this is a sound contention for as the law existed at the time of the appropriation ordinance, municipalities were empowered to arrange for the extension of their sewer facilities beyond their corporate limits. They were precluded only from physically constructing such facilities into areas not yet receiving their water service (Ill. Rev. Stat. 1969, ch. 24, par. 11—149—1.) Appropriations for expenditures are necessarily made prior to actual construction and thus it cannot be said that this appropriation was in violation of existing law when enacted.

■■ Plaintiffs finally maintain that the trial court erred in dismissing Count V of the complaint which alleged that defendant in providing for the construction of the sewer facilities would necessarily be extending its credit to a private entity in violation of section 20 of article IV, of the second Separate Section of the 1870 Illinois Constitution, and Article VIII of Section 1(a) of the 1970 Illinois Constitution. In support of the argument reliance is placed upon *Murphy v. Dever*, 320 Ill. 186, where the City of Chicago was held constitutionally prevented from issuing bonds to provide funds for the elimination of railway grade crossings by elevating of railroad tracks. In the *Dever* case, however, the facilities when constructed would remain the property of the railroad, whereas here, the sewer facilities are clearly to be public property belonging to defendant Village. While the facilities when constructed will admittedly benefit property privately owned, that circumstance alone cannot cause a contemplated improvement to be violative of the cited constitutional prohibitions. Dismissal by the trial court of Count V of plaintiffs' complaint was accordingly correct.

Since we find no error in the determinations of the Circuit Court of Will County, the judgment of a such court should be and is hereby affirmed.

Judgment affirmed.

SCOTT and DIXON, JJ., concur.