THE VILLAGE OF LISLE, Plaintiff-Appellant, v. ACTION OUTDOOR ADVERTISING COMPANY *et al.*, Defendants-Appellees (Michael St. Onge, Defendant).

Second District   No. 2—88—0957

Opinion filed September 25, 1989.

Thomas W. Fawell and John J. Curry, Jr., both of Katten, Muchin & Zavis, of Oak Brook, for appellant.

James E. Saloga and Robert I. Mork, both of Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, of Naperville, and Jamie A. Savaiano, of Simon & Welnhofer, of Oakbrook Terrace, for appellees Chester H. Smith and Judith M. Smith.

Amy L. Kurland, of Simon & Welnhofer, of Oakbrook Terrace (Paul G. Simon, of counsel), for appellee Action Outdoor Advertising Company.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Village of Lisle (Village), brought this action against defendants, Action Outdoor Advertising Company, Chester H. Smith, Judith M. Smith, and Michael St. Onge, seeking to enjoin defendants from constructing an outdoor advertising sign on the Smiths' property. The Village's action was based upon an "Annexation Agreement" between the Village and the Smiths providing for the future annexation of the Smiths' property by the Village. After the Village's motion for a temporary restraining order and petition for preliminary injunction were denied, the parties filed cross-motions for summary judgment. The trial court denied the Village's motion for summary judgment and granted defendants' motion for summary judgment. The Village now appeals from the trial court's order granting summary judgment in favor of defendants. We affirm.

The Village is an Illinois municipal corporation located in Du Page County. Defendants Chester and Judith Smith are the owners and holders in joint tenancy of property located at 25 W. 241 and 25 W. 253 Ogden Avenue, in unincorporated Du Page County. The Smiths' property is not contiguous to the Village and is located approximately 648 feet from the Village's corporate limits.

In late 1985 or early 1986, the Smiths obtained approval from Du Page County to have a parcel of the subject property rezoned as a community business district. At that time, the Smiths were asked if they were interested in tapping into the Village sewer system. The Smiths subsequently contacted the Village and expressed their inter-

est in doing so. At the same time, the Smiths agreed to enter into a preannexation agreement. The Smiths subsequently filed a petition for annexation with the Village requesting annexation of their property.

On February 16, 1987, the Village and the Smiths entered into an annexation agreement which provided for the future annexation and zoning of the Smiths' property when the property becomes contiguous to the Village. The agreement was signed by the Village president and the Smiths and was attested to by the Village clerk. Paragraph 2 of the annexation agreement provided that the Smiths would install, or otherwise construct all landscaping, parking areas, lighting, signage, utilities, structures, or improvements of any kind upon the property in accordance with plans appended to the annexation agreement and determined to have been in accordance with the Village's code. The agreement further referred to the Smiths' petition for annexation and provided that the Smiths would not seek annexation by any other municipality and would object to any other municipality's attempt to annex their property. The Village subsequently passed and approved a resolution authorizing the execution of the annexation agreement.

On October 2, 1987, the Smiths entered into a lease with defendant, Action Outdoor Advertising Company (Action), allowing Action to erect and maintain an outdoor advertising display on the Smiths' property. Action subsequently obtained a building and use permit from Du Page County for the construction of a 14-foot by 48-foot double-faced sign.

On January 13, 1988, Action began construction of the outdoor sign on the Smiths' property. Agents of the Village became aware of the construction and immediately served Action with a stop-work order instructing Action to cease and desist from constructing and installing the outdoor sign at that location. Action refused to comply with the stop-work order.

On January 14, 1988, the Village filed the instant action for injunctive and other relief against the Smiths, Action, and Action's president, Michael St. Onge. The Village's complaint alleged that construction of the sign on the Smiths' property was in violation of the annexation agreement executed between the Smiths and the Village. The Village's complaint further alleged that the construction of the sign at that location frustrated and interfered with the aesthetic and safety goals of the Village and violated the terms of the annexation agreement. The Village sought a preliminary and permanent injunction, damages for breach of contract, and, as against Action and St.

Onge, an award of punitive damages. Contemporaneously with filing its complaint for injunctive and other relief, the Village filed an emergency motion for a temporary restraining order. The Village's motion alleged that the continued construction and installation of the outdoor sign would cause the Village immediate and irreparable injury. The trial court denied the temporary restraining order after a hearing and continued the cause for further proceedings.

On January 27, 1988, the trial court held a hearing on the Village's motion for entry of a preliminary injunction. At that hearing, the Village dismissed Michael St. Onge as a party defendant. The trial court subsequently entered an order providing for further briefing by the parties and continuing the cause for further proceedings. On February 4, 1988, the trial court entered an order denying the Village's motion for a preliminary injunction and setting the cause for trial.

The parties subsequently filed cross-motions for summary judgment. On July 21, 1988, the trial court held a hearing on the motions at which time it continued the cause to August 31, 1988, for status and a ruling.

On August 31, 1988, the trial court entered an opinion and order ruling on the cross-motions for summary judgment. In that opinion, the trial court defined the issues as (1) whether the annexation agreement under present circumstances was valid and enforceable; (2) whether the sign restriction provision of the annexation agreement was valid and enforceable; and (3) whether the Village was entitled to injunctive relief. The trial court concluded that the annexation agreement was valid but unenforceable on the basis that the Smiths' property was not contiguous to the Village's boundaries and contiguity was a contingency of the annexation agreement's enforceability. As an alternative basis for ruling in defendants' favor, the court concluded that section 7 of the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1987, ch. 121, par. 507) precluded the Village from prohibiting the sign's construction. The court noted that the Village could impose regulations on a sign's size, lighting, and spacing, but concluded that the Village was not entitled to injunctive relief because it failed to establish that the outdoor sign violated any size, lighting, or spacing restrictions. Accordingly, the trial court denied the Village's motion for summary judgment and granted summary judgment in favor of defendants. The Village then brought this timely appeal.

■ Summary judgment is properly granted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110,

par. 2—1005(c).) The parties in the instant action filed a stipulation of facts, and no issue of fact is raised. Thus, our function as the reviewing court is to determine whether defendants were entitled to judgment as a matter of law. See *People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 104.

The Village contends that the trial court erred in holding the annexation agreement unenforceable. The Village argues that the annexation agreement is valid and therefore enforceable on its terms absent a good defense. We disagree.

■ Section 11—15.1—1 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1987, ch. 24, par. 11—15.1—1) provides the statutory authority for corporate authorities to enter into annexation agreements. Pursuant to section 11—15.1—1, "[t]he corporate authorities of any municipality may enter into an agreement with one or more of the owners of record of land in any territory *which may be annexed to such municipality as provided in Article 7.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 11—15.1—1.) Section 7—1—1 of the Code defines "territory which may be annexed" as "[a]ny territory which is not within the corporate limits of any municipality *but which is contiguous to a municipality.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1.

■ In the instant action, the Smiths' property is not contiguous to the Village and therefore could not be annexed pursuant to article 7 of the Code. (See Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1; *People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 93.) Since section 11—15.1—1 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—15.1—1) only authorizes municipalities to enter into annexation agreements for property "which may be annexed to such municipality as provided in Article 7," only an agreement regarding contiguous property would be valid.

In addition, the validity of an annexation agreement that purports to allow a municipal authority to exercise its police powers over a noncontiguous tract of property fails when examined in light of the purpose behind the contiguity requirement. The fundamental notion of a municipal corporation is that of unity and continuity, not separated or segregated areas. (*People ex rel. Village of South Barrington v. Village of Hoffman Estates* (1964), 30 Ill. 2d 385, 387.) This necessity for unity of purpose and facilities forms the very basis for the requirement of contiguity. (30 Ill. 2d at 387.) The purpose of the contiguity requirement is to permit the *natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense.* (*People ex rel. County of St. Clair v. City*

*of Belleville* (1981), 84 Ill. 2d 1, 12; *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 462.) In that way, delivery of services is more convenient for the city and more efficient for its citizens. *City of Belleville*, 84 Ill. 2d at 12.

Similarly, the statutory authorization of preannexation agreements serves to further important governmental purposes, such as the encouragement of expanding urban areas *and to do so uniformly, economically, efficiently, and fairly* with optimum provisions made for the establishment of land use controls and necessary municipal improvements, including streets, water, sewer systems, schools, parks, and similar installations. (*Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520, 526.) This approach also discourages fragmentation and the proliferation of special districts. 135 Ill. App. 3d at 526.

■ By allowing the Village in the instant action to enforce its ordinances on a property owner through an annexation agreement where it could not do so through actual annexation would permit the Village to do indirectly what it is prohibited by statute from doing directly. In other words, while the Village cannot annex the Smiths' property because it is not contiguous to the Village, it nonetheless seeks to exercise the same control under an annexation agreement which contemplates future contiguity. It is axiomatic that a party cannot circumvent the purpose of a statute by doing indirectly what it cannot do directly. (*In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 547.) Accordingly, we hold that the annexation agreement in the instant action is *invalid* and unenforceable as the property which is subject to the agreement is not contiguous to the Village and, as such, is not a proper object of annexation.

In so ruling, we are not unmindful of two cases cited by the trial court in support of that court's determination that annexation agreements regarding noncontiguous property are valid. (See *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1; *Continental Illinois National Bank & Trust Co. v. Village of Park Forest* (1972), 4 Ill. App. 3d 811.) While both of these opinions contain language supporting the trial court's conclusion, the validity of an annexation agreement was not directly at issue in *City of Belleville*, and the agreement challenged in *Continental Illinois National Bank & Trust Co.*, unlike the agreement in the instant action, did not purport to allow the municipal authority the power to exercise control over the noncontiguous property. Thus, we do not believe these cases should control our disposition.

In *City of Belleville*, our supreme court considered the validity of four ordinances involving the annexation of three separate but adjacent tracts of property. (*City of Belleville*, 84 Ill. 2d at 4-5.) Two of the ordinances were entered with respect to a noncontiguous parcel of property owned by the Catholic Diocese of Belleville. (84 Ill. 2d at 5.) One of those ordinances adopted an annexation agreement between the city and the Catholic Diocese, while the second and subsequent ordinance purported to annex the Catholic Diocese property. (84 Ill. 2d at 5.) The plaintiffs challenged the validity of the ordinances arguing, among other things, that the territory annexed was not contiguous to the city at the time the petitions for annexation were filed. (84 Ill. 2d at 7.) The supreme court agreed, ruling that the express language of sections 7—1—3 and 7—1—8 of the Code requires that property must be contiguous at the time an annexation petition is filed. (84 Ill. 2d at 11.) Thus, the court held that the ordinances which purported to annex the noncontiguous tracts of property, including the Catholic Diocese property, were invalidly adopted. (84 Ill. 2d at 12.) However, the court went on to state:

"Ordinance No. 3392, which adopted the agreement between the city and the diocese, is not affected by this conclusion. Since that ordinance simply adopts the agreement between the city and the diocese, but does not purport to annex any property, we think its validity is not in serious question here.

\* \* \*

\* \* \* Since ordinance No. 3392 does not violate any statute, those portions of the circuit and appellate court judgments that upheld this ordinance are affirmed." *City of Belleville*, 84 Ill. 2d at 12-14.

In our opinion, the above-quoted language does not support the validity of the annexation agreement between the Village and the Smiths. The court in *City of Belleville* was not directly considering the validity of the annexation agreement and did not test the validity of the agreement under sections 7—1—1 and 11—15.1—1 of the Code which require contiguity. Moreover, the opinion in *City of Belleville* does not indicate whether the agreement in that case, unlike the agreement in the instant action, permitted the city to exercise extraterritorial powers over the noncontiguous property. Thus, the court's conclusion that the validity of the ordinance adopting the annexation agreement in that case was "not in serious question" provides little guidance to the issue before us where the validity of the annexation agreement *is* in serious question.

We are similarly not persuaded by the opinion in *Continental Illi-*

*nois National Bank & Trust Co. v. Village of Park Forest* (1972), 4 Ill. App. 3d 811, 817, wherein the Appellate Court for the Third District rejected a challenge to an annexation agreement or "contract" between a property owner and the Village of Park Forest. The annexation agreement in that case provided that the Village would extend a sewer to the property for the owner's agreement to pay for the service and not petition or agree to permit the annexation of the tract to any other municipal corporation without first petitioning for annexation to the Village. (4 Ill. App. 3d at 817.) In rejecting the plaintiffs' challenge, the court stated:

> "The commitment of [the property owner] to request annexation to defendant before seeking annexation to another municipality is, in legal contemplation, a nullity until the tract in question becomes contiguous to defendant's boundary. We agree with defendant that under this agreement there is, at this juncture, no way that [the property owner] may compel its properties' annexation by defendant, *and there is no manner in which defendant may unilaterally compel [the property owner] to seek annexation of the property to the Village.*" (Emphasis added.) *Continental Illinois National Bank*, 4 Ill. App. 3d at 817.

As we noted above with respect to the agreement in *City of Belleville*, the agreement in *Continental Illinois National Bank & Trust Co.*, unlike the agreement in the instant action, does not indicate any manner in which the municipal authority could exercise extraterritorial power over the noncontiguous property. In the case at bar, the annexation agreement purports to allow the Village to exercise extraterritorial control over the Smiths' use of their property notwithstanding that the property is not contiguous to the Village and therefore not subject to annexation. In our opinion, the nature of such an agreement violates the letter and spirit of the Code requiring contiguity of boundaries before allowing annexation.

The Village nonetheless asserts that section 7—1—8 of the Code authorizes corporate authorities to enter into annexation agreements for noncontiguous property. Section 7—1—8 of the Code provides that territory not within the corporate limits of a municipality "but which is contiguous to a municipality *at the time of annexation*" may be annexed to the municipality. (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8.) The Village argues that the language "contiguous *** at the time of annexation" implies that a municipality *may enter into annexation agreements for noncontiguous property.* The Village concludes that, since agreements to annex noncontiguous property are valid pursuant to section 7—1—8, the terms of such agreements are

enforceable regardless of whether the property is contiguous at the time of enforcement. In other words, contiguity is not a condition precedent to enforcement of an annexation agreement. Although the Village concedes that such a rule could result in extraterritorial grants of power, the Village asserts that the Code's provisions "in and of themselves specifically grant extraterritorial power over property contemplated for annexation." We disagree.

We note that the underlying basis for the Village's argument that section 7—1—8 authorizes parties to enter into annexation agreements for noncontiguous property is faulty and inapplicable to the instant action. The language "contiguous *** at the time of annexation" was added to section 7—1—8 after our supreme court decided *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1. In *City of Belleville*, the city sought to annex three adjacent tracts of property, only one of which was contiguous to the city. (84 Ill. 2d at 4-5.) The court invalidated the ordinances purporting to annex the two noncontiguous tracts, stating:

> "We realize that this construction requires a municipality desirous of annexing several parcels, only one of which is contiguous to the municipality, to annex each parcel at separate times. In some situations this requirement may appear cumbersome. We can only conclude that the General Assembly has imposed this limitation to prevent a municipality from conducting a wholesale annexation of successive parcels of property where each parcel, other than the first, is not contiguous to, and is more remote from, the original corporate limits." *City of Belleville*, 84 Ill. 2d at 11.

■ After the opinion in *City of Belleville* was filed, the legislature adopted Public Act 82—211, which added the words "at the time of annexation" in the first sentence of section 7—1—8 and also added section 7—1—48 to the Code. (See Pub. Act 82—211, eff. Aug. 14, 1981.) Section 7—1—48 authorizes the annexation of multiple parcels of property in a single annexation proceeding; however, that section further provides that an annexation of property which does not comply with the section 7 requirements would not invalidate annexation of the "remainder of the annexed territory, *unless the exclusion or disconnection of the non-complying area would destroy the contiguity of the remaining territory.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—48(b).) In other words, section 7—1—48 authorizes the annexation of multiple parcels in a single annexation proceeding as long as at least one parcel is contiguous to the annexing municipality *and the remaining parcels are contiguous to each other*. (See Ill.

Rev. Stat. 1987, ch. 24, par. 7—1—48(b).) Thus, while Public Act 82—211 authorized the procedure invalidated in *City of Belleville*, it did not, as the Village suggests, do away with the requirement of contiguity. The instant action does not involve the annexation of successive parcels, and the Village does not argue or otherwise comment on the fact that another parcel of property which is not subject to the annexation agreement separates the Smiths' property from the Village.

■■ Under these circumstances, enforcement of the zoning provisions of the annexation agreement in the instant action would permit the Village to exercise extraterritorial power over the Smiths' property. Absent an express grant of statutory authority, a municipality may not exercise extraterritorial governmental power. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 77-78.) The Code's provisions do not, as the Village contends, grant such authority. We agree with defendants that the practical effect of such a finding would authorize a municipality to enter into an annexation agreement for property anywhere within the State and, pursuant to the agreement, exercise its police power over that property. We do not think such a result was intended by the legislature.

Having concluded that the annexation agreement in the instant action is invalid and unenforceable as it is not authorized by statute, we need not address the alternative basis relied upon by the trial court in entering judgment for defendants. However, it is necessary to comment briefly on the Village's remaining argument that equitable estoppel precludes defendants from challenging the validity of the annexation agreement. The Village asserts that estoppel should apply since the Smiths, as parties to the agreement, have derived substantial contractual benefits from the agreement. We disagree.

■■ ■ Contracts entered into by a municipality which are expressly prohibited by law are void and cannot be rendered valid by estoppel. (*Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 291; *Stahelin v. Board of Education, School District No. 4* (1967), 87 Ill. App. 2d 28, 41-42.) Section 11—15.1—2(f) of the Code provides that annexation agreements may not incorporate any provisions inconsistent with the Code or forbidden by law. (Ill. Rev. Stat. 1987, ch. 24, par. 11—15.1—2(f).) As we have noted above, the annexation agreement in the instant action was invalid and not authorized by statute as it did not relate to property contiguous with the Village and therefore resulted in allowing the Village to exercise extraterritorial police powers. Accordingly, the Village cannot now argue that defendants should be estopped from asserting its validity.

Moreover, even if the Village was authorized to enter into the

agreement, equitable estoppel would not apply. Estoppel refers to the reliance by one party on the words or conduct of another so that the party changes his position and suffers harm. (*Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 95-96.) The record in the instant action, while establishing that the Smiths did receive water and sewer service, also indicates that they paid the Village for those services and, in fact, paid double the normal fee since their property was located outside the Village limits. The Village argues that this payment "does not vitiate the fact that [the Smiths] received substantial benefits under the annexation agreement" since the Smiths "would have never obtained [the benefits] without agreeing to the express terms of the agreement." This assertion is not supported by the record.

Accordingly, for the reasons set forth above, we affirm the judgment of the circuit court of Du Page County granting defendants' motion for summary judgment.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.