No. 2--05--0547                          filed: 5/25/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| SEIGLES, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 05--CH--8 |
| | ) | |
| THE CITY OF ST. CHARLES, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, the City of St. Charles, appeals from the judgment of the circuit court declaring

its lumber tax ordinance unconstitutional and granting summary judgment in favor of

plaintiff, Seigles, Inc.  We affirm, agreeing with the trial court that the lumber tax ordinance

has an extraterritorial effect that is not expressly authorized by the legislature.

Plaintiff sells lumber and other building materials.  Plaintiff sells its products in two

ways: (1) on-site sales generated at its retail centers, one of which is located within

defendant's corporate limits; and (2) off-site sales accepted at its central sales office.  In

May 2000, plaintiff and the Village of Hampshire entered into an economic development

agreement whereby plaintiff agreed to build a central sales office within Hampshire in

exchange for Hampshire's promise to rebate to plaintiff a portion of its tax on the sales

generated by the central sales office. Currently, all of plaintiff's off-site sales are accepted and processed at the Hampshire office.

In September 2004, defendant, a home rule municipality, promulgated an ordinance entitled "Lumber Tax," codified as section 3.46 of its municipal code. St. Charles Municipal Code §3.46.010 et seq. (eff. September 20, 2004). The ordinance imposes a tax "upon all persons engaged in the City in the business of operating a lumberyard at a rate of two percent (2%) of the gross sales price of all lumber distributed from a location within the City." St. Charles Municipal Code §3.46.010 (eff. September 20, 2004). "Lumberyard" is defined as a "place where lumber is ordered, delivered or sold." St. Charles Municipal Code §3.46020(B) (eff. September 20, 2004). To comply with the ordinance, the payer must submit the tax along with a return stating "[t]he total amount of gross sales receipts received by the person during the preceding calendar month from lumber distributed from a location within St. Charles during such preceding calendar month." St. Charles Municipal Code §3.46.040 (eff. September 20, 2004). The ordinance allows the following credit: "Any person engaged in the business of operating a lumberyard and [sic] pays State and local sales tax on lumber sold shall receive a credit against the amount of tax due pursuant to this Chapter in an amount equal to the State and local sales tax actually received by the City for the sale of such lumber." St. Charles Municipal Code §3.46030 (eff. September 20, 2004).

Plaintiff filed suit challenging the tax as unauthorized under Illinois law and in violation of the state and federal constitutions. Plaintiff and defendant thereafter filed cross-motions for summary judgment. The trial court accepted plaintiff's argument that the lumber tax is an unauthorized attempt to extend defendant's influence beyond its borders.

The trial court declared the lumber tax unconstitutional and granted summary judgment in favor of plaintiff.

Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2004). The trial court's grant of summary judgment is reviewed de novo. Platt v. Gateway International Motorsports Corp., 351 Ill. App. 3d 326, 329 (2004).

On appeal, plaintiff reasserts its numerous challenges to the lumber tax. Plaintiff argues that the tax violates state law and, alternatively, is unconstitutional because it is an impermissible exercise of extraterritorial influence and creates an invalid classification. Because the issue of extraterritoriality is dispositive of this appeal, we address it first.

Our supreme court took up the issue of the territorial restrictions on a home rule municipality's power in the foundational case of City of Carbondale v. Van Natta, 61 Ill. 2d 483 (1975). In Van Natta, the court was asked to determine whether the City of Carbondale had authority to prescribe setback lines for areas beyond the city's boundaries. The court began its analysis by looking to section 6(a) of article VII of the Illinois Constitution (Ill. Const.1970, art. VII, §6(a)), which establishes the power of home rule municipalities:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

Of section 6(a), the court said:

"At the constitutional convention the Committee on Local Government recommended that the grant of powers in section 6(a) contain the specifically limiting wording 'within its corporate limits.' [Citation.] Though the language was not used when the section was adopted [citation], an examination of the proceedings of the convention shows that the intention was not to confer extraterritorial sovereign or governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature. [Citations.]" Van Natta, 61 Ill. 2d at 485-86.

It is now axiomatic that home rule units like defendant have no jurisdiction beyond their corporate limits except what is expressly granted by the legislature. Village of Chatham v. County of Sangamon, 351 Ill. App. 3d 889, 893 (2004); Harris Bank of Roselle v. Village of Mettawa, 243 Ill. App. 3d 103, 114 (1993); Village of Lisle v. Action Outdoor Advertising Co., 188 Ill. App. 3d 751, 760 (1989). Thus, we must determine whether defendant's lumber tax ordinance has an extraterritorial effect and, if so, whether that extraterritorial influence is expressly authorized by the legislature.

The lumber tax ordinance has an extraterritorial effect because it taxes sales occurring outside defendant's boundaries. Defendant insists that the ordinance is keyed to distribution, not sales. All distribution of lumber, defendant claims, is subject to the tax whether or not the distribution is accompanied by a sale. Plaintiff disagrees, citing the operative clause of the ordinance, which proclaims that the tax is on the "gross sales price" of lumber distributed from a location within defendant's borders. St. Charles Municipal Code §3.46.010 (eff. September 20, 2004). Plaintiff asserts that a tax on the "sales price" of lumber is perforce a tax on the sale of lumber. In reply, defendant suggests that plaintiff

"incorrectly surmises that the absence of a sale equates to an absence of a sales price" and that "all properties have a gross sales price" even if no sale occurs. Defendant, however, does not explain how there can be a sales price without a sale. Defendant denies that there exists within its boundaries a lumberyard that merely distributes lumber and generates no sales, and admits that it "would have to revise its Ordinance to include a more elaborate form of lumber valuation" if such a lumberyard did exist. Thus, defendant concedes that the ordinance, as presently written, does not tax any distribution other than what is linked to sales.

That concession is, we note, compelled. The suggestion that the tax is not keyed to sales is difficult enough to reconcile with the language of "gross sales price," but that contention is quite impossible to reconcile with the fact that compliance with the ordinance requires submission of the tax along with a return stating "[t]he total amount of gross sales receipts received by the person during the preceding calendar month from lumber distributed from a location within St. Charles during such preceding calendar month." (Emphasis added.) St. Charles Municipal Code §3.46.040 (eff. September 20, 2004). A court should not construe an ordinance in a manner that renders words or phrases superfluous or meaningless. In re Application of the County Collector, 132 Ill. 2d 64, 72 (1989); County of Montgomery v. Deer Creek, Inc., 294 Ill. App. 3d 851, 856 (1998). Significantly, no sum other than the total of the gross sales receipts need be indicated on the return. We must conclude that the tax is based on the lumberyard's total gross sales receipts, for we can conceive of no purpose for the inclusion of that total on the return but to verify that the proper amount of tax has been paid. Therefore, defendant's claim that the

lumber tax is not a tax on the sale of lumber is false. Even if there might be a sales price in the absence of a sale, there cannot be a sales <u>receipt</u> in the absence of a sale.

Thus, the ordinance taxes the sale of lumber--and not just sales that occur within defendant's boundaries. The tax is calculated based on total sales receipts without any regard for the location of the sale. Moreover, the ordinance grants a credit against the lumber tax "equal to the State and local sales tax actually received by [defendant] for the sale of [the] lumber." St. Charles Municipal Code §3.46030 (eff. September 20, 2004). Hence, sales occurring within defendant's boundaries, and therefore already subject to the general sales tax, are exempt from the lumber tax while sales outside defendant's boundaries remain subject to it. By taxing sales occurring outside its borders, defendant exerts extraterritorial influence.

The remaining question is whether the legislature has granted defendant authority to exercise such extraterritorial power. Defendant suggests that authorization for such power is found in section 11--42--1 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11--42--1 (West 2004)), which provides:

"The corporate authorities of each municipality may license, tax, and regulate auctioneers, private detectives, demolition contractors, money changers, bankers, brokers other than insurance brokers, barbers, <u>and the keepers or owners of lumber yards, lumber storehouses,</u> livery stables, public scales, ice cream parlors, coffee houses, florists, detective agencies, barber shops and sellers of tickets for theatricals, shows, amusements, athletic events and other exhibitions at a place other than the theatre or location ***." (Emphasis added.)

As noted previously, statutory authorization for a municipality's extraterritorial exercise of power must be express. Village of Chatham, 351 Ill. App. 3d at 893; Harris Bank, 243 Ill. App. 3d at 114; Village of Lisle, 188 Ill. App. 3d at 760. For instance, in Commonwealth Edison Co. v. Community Unit School District No. 200, 44 Ill. App. 3d 665 (1977), a school district argued that a city tax on utility services within the city had extraterritorial effect. The district complained that the utility companies would pass the cost on to their customers, some of whom were located outside the city, and these businesses would in turn pass the cost on to their clients, including the school district. The appellate court held that any extraterritorial effect had been authorized by the combination of section 8--11--2 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 8--11--2), which empowered municipalities to tax the "gross receipts" of utilities, and section 36(a) of "An act concerning public utilities" (Ill. Rev. Stat. 1975, chap. 111 2/3, par. 36(a)), which permitted the utilities to pass the cost on to their "customers," the term having no limitation based on the customers' places of business. Commonwealth Edison, 44 Ill. App. 3d at 668, 672.

A like authorization is absent here. Section 11--42--1 simply allows municipalities to "tax" lumberyards. Unlike in Commonwealth Edison, where the statute specified the manner of tax authorized, section 11--42--1 contains no definition of "tax." Moreover, the statute in Commonwealth Edison specified a manner of cost transfer to "customers," which, when accorded its plain meaning, would include individuals and entities outside the municipality. In contrast, there is no express statement or even suggestion in section 11--42--1 that its taxing power may cross municipal boundaries. We cannot accept that section 11--42--1 permits a municipality to tax the sale of lumber that occurs outside the territorial limits of that municipality.

Few cases have construed section 11--42--1, and fewer still have determined to what extent, if any, it permits a municipality to exert extraterritorial power. We have found two cases, <u>Kiel v. City of Chicago</u>, 176 Ill. 137 (1898), and <u>Mr. B's Inc., v. City of Chicago</u>, 302 Ill. App. 3d 930 (1998), that provide some guidance. The plaintiff in <u>Kiel</u> was a brewer who brewed his product entirely in Indiana but sold some in Chicago. He was fined for violating Chicago's ordinance requiring a license for any brewery that sold or delivered beer within the city. Our supreme court held that the predecessor of section 11--42--1 provided no authority for a municipality to require a license of a brewery located outside the city limits. <u>Kiel</u>, 176 Ill. 2d at 141-42. The court held that Chicago's ordinance would have to be authorized by the "express power conferred" by the statutory language, but the court found no such authorization. <u>Kiel</u>, 176 Ill. at 140. The court said:

"The power to pass an ordinance and impose a penalty for its violation is to be strictly construed, and is not to be extended, by implication, to persons or things not expressly within the terms of such power. Such power must be reasonably construed. The selling of the product of a brewery, distillery or lumber yard is one of the purposes of existence of such business, but the sale of a keg of beer, a bottle of alcohol or lumber to build a house does not constitute a brewery, a distillery or a lumber yard. *** It cannot be held to be within the spirit and meaning of this provision conferring enumerated powers on city councils, that a city or village may require a license from every distillery in the United States whose products is sold within the city, or its sale be actually restricted." <u>Kiel</u>, 176 Ill. at 141.

<u>Kiel</u> interpreted the predecessor of section 11--42--1 as conferring no authority to tax breweries or distilleries located outside Chicago's territorial limits. Employing the same

rules of construction, we conclude that section 11--42--1 does not authorize defendant to tax the sale of lumber outside its territorial limits.

Mr. B's lends further support to this holding. The plaintiffs in Mr. B's challenged the validity of a tax imposed by the City of Chicago on the price that resellers of tickets received above the face value of the tickets. The plaintiffs argued that the tax was not authorized by state law and, alternatively, was unconstitutional as an unauthorized exercise of extraterritorial power. The appellate court found authorization for the tax in section 11--42--1, which empowers municipalities to tax "sellers of tickets" (65 ILCS 5/11--42--1 (West 2004)). Turning to the constitutional issue, the appellate court held that the record was inadequate to ascertain the location of the plaintiffs' places of business and remanded the case for further evidence on whether the plaintiffs were being taxed extraterritorially. Mr. B's, 302 Ill. App. 3d at 939. Significantly, the court did not consider the constitutional issue resolved by its holding that the tax was authorized by section 11--42--1, which would have been appropriate had the court believed that section 11--42--1 contained a grant of extraterritorial jurisdiction.

The parties argue at length over the relevance of Commercial National Bank of Chicago v. City of Chicago, 89 Ill. 2d 45 (1982), to this case. At issue in Commercial National Bank was the validity of a service tax issued by the City of Chicago. The tax was triggered if the purchaser or seller was in the city at the time the service was provided and 50% or more of the work was performed in the city or 50% or more of the cost was incurred in the city. Our supreme court agreed with the plaintiff that the tax had an impermissible extraterritorial effect:

"A nonresident purchaser would be liable for the tax even though his only contact with the city might be through dealings with sellers of service 'in the city.' A nonresident purchaser could contract with a nonresident seller of service and if that seller 'substantially performs' the service in the city both are then liable for the tax on the entire transaction. To 'substantially perform' the service in the city, the seller need only perform 50% of the work or incur 50% of the cost in the city, but the tax would be on the total value of the services. This is a clear attempt by the city of Chicago to give extraterritorial effect to its ordinance and to tax services that have no connection with the taxing city." Commercial National Bank, 89 Ill. 2d at 77.

The supreme court went on to note that the city had not attempted to identify a statutory grant of authorization for the ordinance. The court found that "Chicago's imposition of tax liability or tax-collection duties upon nonresident purchasers and sellers of services performed outside the city is incompatible with the intent of the drafters of our constitution as determined in Van Natta." (Emphasis in original.) Commercial National Bank, 89 Ill. 2d at 78. The court noted that the defect in the ordinance was not that it taxed nonresidents but rather that it permitted taxation of services "not rendered or performed in the territorial jurisdiction of the taxing entity." Commercial National Bank, 89 Ill. 2d at 78. The court explained:

"In all our previous decisions on the home rule units' taxing power, the commodities or services taxed were purchased or used within the territorial limits of the taxing entity. Here, the ordinance purports to tax not only services performed in the city, but also services performed outside the city." Commercial National Bank, 89 Ill. 2d at 78.

The court contrasted its prior decision in Mulligan v. Dunne, 61 Ill. 2d 544 (1975), which upheld Cook County's ordinance taxing the retail sale of alcohol within the county. The ordinance required the wholesalers to collect the tax from the retailers, who in turn collected it from the consumers by including it in the sale price. The court in Mulligan rejected the plaintiff's claim that the ordinance was an invalid exercise of extraterritorial power because it applied to wholesalers located outside the county. Mulligan, 61 Ill. 2d at 557-58. In Commercial National Bank, the court noted that the distinguishing factor between that case and Mulligan was that the ordinance in Mulligan taxed sales within the county, and "it was not an extraterritorial exercise of home rule powers to impose tax-collection duties upon a nonresident wholesaler who did business within the county." Commercial National Bank, 89 Ill. 2d at 78, citing Mulligan, 61 Ill. 2d at 557-58.

The lumber tax ordinance exceeds the limits set by Commercial National Bank. The tax is not limited to "commodities *** purchased *** within the territorial limits of the taxing entity" (Commercial National Bank, 89 Ill. 2d at 78). Rather, the tax applies to sales occurring outside defendant's territorial limits. Indeed, the very grounds on which the court in Commercial National Bank distinguished that case from Mulligan are applicable here. Unlike the ordinance in Mulligan, which was limited to sales inside the boundaries of the taxing entity, the lumber tax ordinance taxes sales outside defendant's territorial limits. Thus, Mulligan is distinguishable, and we find that defendant's lumber tax ordinance has an extraterritorial effect that is not expressly authorized by the legislature. Because this issue is dispositive, we need not reach plaintiff's remaining challenges to the ordinance. We conclude that the trial court did not err in granting summary judgment in favor of plaintiff.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

GROMETER, P.J., and CALLUM, J., concur.